## Modern Woodmen of America v. Senator L. Hicks et al.

1. PLEADING—*Traversing Replication Waives Demurrer to Same.*— Where a party demurs to a replication, and the demurrer is overruled, and he then traverses it, he waives his ground of demurrer.

2. MUTUAL BENEFIT SOCIETIES—*No Action of a Local Lodge Officer Constitutes a Waiver of Action Required to be Taken by the Board of Directors.*—No action of a local lodge officer is sufficient to constitute a waiver of some action required to be taken by the board of directors.

3. SAME—*Preparation of Death Proofs by Lodge Officers Does Not Waive Forfeiture by Reason of Suicide.*—The fact that a local lodge officer prepares death proofs does not waive any forfeiture or liability which exists by reason of the death of the insured by suicide.

Assumpsit, upon a certificate of life insurance. Appeal from the Circuit Court of McDonough County; the Hon. GEORGE W. THOMPSON, Judge presiding. Heard in this court at the November term, 1902. Reversed and remanded. Opinion filed April 30, 1903.

J. W. WHITE, attorney for appellant.

ELTING & O'HARRA and APOLLOS W. O'HARRA, attorneys for appellees.

MR. JUSTICE HARKER delivered the opinion of the court.

Appellant is a fraternal beneficiary society, organized under the laws of the State of Illinois. Its headquarters is at Rock Island, Illinois. It transacts its business in the ordinary way of fraternal societies and among its subordinate bodies, which are called local camps. Among the

officers of the local camp are that of consul, clerk and physician, it being the duty of the consul to preside at the meetings of the camp, the duty of the clerk to keep the record and the duty of the physician to make a physical examination of applicants for admission. A person desiring membership in the society makes a formal written request, recommended by some of its members, and this is passed on by the local camp. If it be favorably considered, he is given a blank application, which he presents to the camp's physician, who aids him in filling out the same by writing in his answers. After all questions have been answered and signed by the applicant, the physician makes his report and forwards the application to the head physician of the society, and if it be approved by him, it is then forwarded to the society's head office at Rock Island, where the head clerk of the society inspects it. If the application is accepted by him he issues a benefit certificate, which is forwarded to the local camp for delivery to the member, after which time he is initiated and pays the prescribed fee.

Franklin P. Hicks, a resident of Blandsville, Illinois, on the 16th of September, 1897, made his written application for membership in Local Camp No. 396, located at that point, and for its benefit certificate for the sum of $2,000, payable to his surviving children. In his application, he agreed that any untrue or false statements or answers made to the camp physician should forfeit the rights of himself and his beneficiaries to any and all benefits therein and arising therefrom.

To question 8, "Do you understand and agree that this order does not indemnify against death from suicide or from death resulting from occupations prohibited by its laws?" he answered "Yes." To question 22, "Have any of your near relatives committed suicide or been afflicted with consumption, insanity or other constitutional or hereditary diseases?" he answered "No."

On this application, a benefit certificate was issued by appellant, forwarded to the local camp and delivered to him when he was initiated. The certificate, among other conditions, contained the following:

"If he (meaning Hicks) shall die within three years after becoming a member of this society as a result of any means or act which, had such means or act been used or done by him while in possession of his natural faculties, unimpaired. would be deemed self-destruction    *    *    * or if his said application for membership, or any part of it, shall be found in any respect untrue, then this certificate shall be null and void and of no effect, and all moneys which have been paid and all rights and benefits which may have accrued, on account of this certificate, shall be absolutely forfeited and this certificate become null' and void."

"No action can or shall be maintained on this certificate until after the proofs of death and claimant's right to benefit, as provided for in by-laws for this society, have been filed with the head clerk and passed upon by the board of directors, nor unless brought within one year from the date of such action by said board."

The certificate was issued on the 21st day of September, 1897. On January 6, 1899, Hicks committed suicide by hanging himself. Prior to the time that Hicks made his application for membership his father, Ebenezer Hicks, had been insane and confined in the state insane asylum at Jacksonville, being sent there in March, 1886, and dying two years later. Soon after the death of Franklin P. Hicks, C. N. Wilson, the consul, and H. J. Jacobs, the clerk of the local camp at Blandsville, took a set of death-proof blanks to the widow of deceased and assisted in making up death proofs, which were forwarded to the headquarters of the society at Rock Island. When the board of directors acted upon the proofs they rejected the claim, and, on the 21st of June, 1895, notified appellee, through the camp clerk at Blandsville, of such action. The claim was rejected upon the grounds that the deceased made false statements in his application and that he came to his death by his own hand.

Appellees, who are children of deceased and the beneficiaries in the certificate, after notice of the rejection of the claim, began this suit in the Circuit Court of McDonough County for the purpose of recovering the $2,000 mentioned in the certificate. Appellant, to the declaration pleaded, first, the general issue; second, that the contract sued on con-

sisted of an application for membership and a benefit certificate, and set forth therein various provisions contained therein, among which was that part of the application in which the deceased member stated that none of his near relatives had ever been insane, alleging that that statement was false, and because of which the benefit certificate was null and void, and third, that the deceased member came to his death by his own hand, thereby making the benefit certificate sued on null and void. The suicide defense was presented in three different pleas. Appellees took issue upon the first plea and filed nineteen replications to all the others.

The court sustained demurrers to the tenth, twelfth, thirteenth, fourteenth, fifteenth, sixteenth and seventeenth, and overruled the same as to all the others. The first replication alleged that appellant had knowledge that the father of the applicant was insane at the time it received the application and issued to him its benefit certificate, and it rejoined denying such knowledge. The second replication denied the execution of the application for membership and appellant joined issue on it. The third replication denied the insanity of the father of the applicant prior to the time it is alleged the application was made and appellant joined issue. The fourth replication alleged that the answers in the application were written by the camp physician with knowledge of the fact concerning the insanity of deceased's father being false, and appellant rejoined denying the knowledge of the physician. The fifth replication alleged that Wilson, as consul, knew of the false answers made in the application and that the father was insane. Appellant rejoined that Wilson had no knowledge that the false answers were made. The sixth replication alleged that the physician knew when the application was made that the father of the applicant had been insane and appellant rejoined denying that the physician was its agent or had knowledge of its insanity. The seventh replication alleged that appellant called for death proofs, having knowledge that the father of the applicant had been insane

Modern Woodmen of America v. Hicks.

prior to the time the application was made, and appellant rejoined by denying such knowledge, and also setting forth in another rejoinder certain sections of the by-laws of the society, justifying thereunder all that had been done in reference to death proofs. The eighth replication alleged that appellant had knowledge that the father of the applicant had been insane prior to the time the application was made, and that an application was made and a benefit certificate delivered with full knowledge of his insanity, and appellant rejoined denying such knowledge. The eleventh replication alleged that appellant had called for death proofs after its knowledge that Franklin P. Hicks had come to his death by hanging himself, whereby it waived all objections and conditions with reference to suicide, and appellant rejoined by denying that it called for death proofs, and also by justifying under certain provisions of the by-laws. The eighteenth replication alleged that the consul and clerk of the local camp called for death proofs, having knowledge of the suicide of the member, and appellant rejoined by denying that it called for proofs of death, and also by justifying under the by-laws. The nineteenth replication is like the eighteenth and replied to in the same manner.

The court sustained demurrers to all the rejoinders in which appellant justified any action in relation to the proofs of death under the provisions of the by-laws and overruled all the demurrers to the other rejoinders. Appellant elected to abide by its rejoinders to which the court had sustained demurrers. Appellees joined issue on all of the rejoinders to which the court had overruled their demurrers, and a trial was had by the court without a jury. The court, after hearing the testimony, rendered judgment for appellees in the sum of $2,270.80, from which judgment appellant prosecutes this appeal.

The first error assigned is, "The court erred in overruling the general and special demurrers to replications 1, 4, 5, 6, 7, 8, 9, 11, 18 and 19, and each of them."

We are relieved from discussing the sufficiency of those

replications by the action of appellant in traversing the replications after its demurrers to the same had been overruled. It is not now in a position to contend that the allegations contained in the replications do not in law constitute an estoppel or waiver. If it is desired to have a court of review consider the sufficiency of the replications it should have abided by its demurrers. Home Mutual Fire Ins. Co. v. Garfield, 60 Ill. 124; I. C. R. R. Co. v. Parks, 88 Ill. 373; B. S. Green Co. v. Blodgett, 159 Ill. 169.

To the eleventh, eighteenth and nineteenth replications, setting up that appellant waived the suicide conditions contained in the certificate by calling for and accepting death proofs after its knowledge that Hicks had come to his death by hanging himself, appellant rejoined, setting up that the calling for proofs of death was done in accordance to and in strict compliance with the by-laws of the society. We have carefully examined these rejoinders, and have reached the conclusion that the court below erred in sustaining demurrers to them. From the rejoinders and the by-laws referred to and copied into them, it is clear it was a part of the contract that the decision of the board of directors was necessary before liability could be fixed upon appellant. According to the by-laws, the board of directors could not act until proofs of death had been forwarded to them. Indeed, a condition of the certificate itself was that no action could be maintained until after the proofs of death had been filed with the head clerk and passed upon by the board of directors. In our view, no action of the local consul, or the local clerk, would be sufficient to constitute a waiver of some action required to be taken by the board of directors. If the board of directors passed favorably upon the claim, nothing of course remained but to pay over the money to the beneficiaries. If the board of directors rejected the claim, then the beneficiaries would be in a position to maintain suit. They could have done so had the board of directors refused to act; but it is difficult for us to see how the society should be held as having waived the condition that the

suicide of the insured would render the policy void by the officer of the local camp simply taking the steps which the by-laws required of them to have the case placed in a position for the board of directors. We do not look upon the suicide clause contained in the certificate, and the alleged waiver by taking proofs of death in the same light that we do the condition with reference to false statements made by the applicant and the waiver claimed against it. If the local physician and the consul knew that the applicant had made a false statement with reference to the prior insanity of his father, and notwithstanding such knowledge, accepted him as a member, receiving dues and fees from him, such acceptance would constitute a waiver upon the part of the society of any advantage that it might take of the fact that the applicant had made false answers.

Hicks and the appellees were chargeable with notice of the limitation of the authority of the local camp officers, and we are clearly of the opinion that the officers' acts with reference to the preparation of death proofs did not waive any forfeiture or liability which existed by reason of Hicks committing suicide.

It is contended by appellant that the proofs do not show that the officers of the local camp had knowledge that the statements of the applicant were false. It is insisted that the physician who aided the applicant in filling up the blank had forgotten the fact that Ebenezer Hicks was insane, and that the other officers did not know what answers had been made. We do not care to express our views with reference to the preponderance of the evidence upon this issue, as the judgment must be reversed because of the error of the court in sustaining the demurrer to the seventh and eleventh rejoinders.

The judgment is reversed and the cause remanded, with directions to the Circuit Court to overrule the demurrers to the seventh and eleventh rejoinders.