## Staunton.

MODERN WOODMEN OF AMERICA V. LAWSON.

September 9, 1909.

1. INTOXICATING LIQUORS—*Wood Alcohol—Poison.*—Wood alcohol is a narcotic poison, and one who is killed by drinking wood alcohol by mistake for grain alcohol cannot be said to have died by the intemperate use of intoxicating liquors.

2. INSURANCE—*False Statements in Application as to Health.*—A false statement made in an application for insurance concerning a mere temporary indisposition, not affecting the general health or constitution of the applicant, will not vitiate the policy, unless it be clearly proved that the statement was wilfully false, or fraudulently made, or was material. The fact that the answer was merely untrue is not sufficient, under the statute of this State, to vitiate the policy.

3. INSURANCE—*Powers of Agent—Limitations of Policy.*—It is a matter of common knowledge that the business of insurance companies is necessarily transacted through agents, and they are presumed to know better than the public with whom they deal the requirements of their companies. Consequently, an applicant for insurance has a right to depend upon the superior knowledge of the agent, and, in the absence of notice of limitations upon his powers, to assume that his authority is commensurate with the nature of the employment, and in good faith to act upon the information imparted by the agent, and to follow his instructions in all matters pertaining to the preparation of the application.

4. INSURANCE—*Benefit Societies—Application for Membership—False Statements Induced by Officers of Society—Estoppel.*—An applicant for membership in a mutual benefit society does not become a member until the delivery of the certificate of membership, and is not presumed to know the constitution and by-laws of the society, and if he is induced to join by false and misleading representations by the officers and agents of the society as to the purport and effect of certain questions in the application for membership, and in consequence thereof makes, or assents to, answers to such questions which both he and they know

to be false, and he is accepted as a member and pays his dues, the society cannot, after loss, set up the falsity of the answers to such questions as a ground for avoiding liability on its certificate.

Error to a judgment of the Circuit Court of Wythe county in an action of *assumpsit.* Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Freeman Plantz* and *Kime & Fox,* for the plaintiff in error.

*W. S. Poage* and *W. B. Kegley,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

This action was brought by Lizzie B. Lawson, beneficiary, to recover of the defendant, the Modern Woodmen of America, a beneficial society, the amount of a certificate issued to her late husband, Malcolm D. Lawson, deceased.

There was a verdict and judgment for the plaintiff, which judgment is now the subject of review.

The salient facts are as follows: Late in June or early in July, 1907, J. W. Tinsley, as deputy head consul of the society, organized a local camp at Ivanhoe, in Wythe county, Virginia, with Joseph M. Warren, consul, McTeer Painter, banker, Samuel H. Dean, clerk, and Dr. J. S. Clark, camp physician. The falsity of the answers to the following interrogations in the application for membership is relied on to defeat the recovery:

(1) "Do you abstain entirely from the use of intoxicating liquors? A. Yes.

"How long have you been a total abstainer? A. Always.

"Were you ever intoxicated? A. No.

"Do you use intoxicating liquors daily? A. No."

Without giving the applicant opportunity to respond to these questions, the deputy head consul wrote the foregoing answers, remarking to the applicant meanwhile, "I know you don't." "All of us take a drink; it don't mean you; it means a straight-out drunkard—stays drunk all the time." "All of us take a drink; a drink is not going to hurt anybody." These ejaculations were made while the deputy head consul was engaged in writing out the answers. In the special report of the camp physician it is said that the personal habits and physical and mental condition of the applicant render his prospects to attain full expectancy first class. At the time of these transactions it was known to the deputy head consul, to Warren, the consul of the local camp, to Dean, the clerk, and to Clark, the camp physician, that the answers were untrue, and that the applicant was a man of intemperate habits.

The following question and answer likewise appear in the application:

(2)   "Have you, within the last seven years, been treated by or consulted any person, physician or physicians in regard to personal ailment? No."

With respect to this interrogatory and answer it was proved by Dr. Clark that some three months before Lawson's death he was passing the furnace, when Lawson came out from where he was working and complained of biliousness; that without dismounting from his horse he gave him a dose of calomel and supposed that after he recovered from the effects of the medicine he was all right.

Lawson paid his first dues and assessment, and his membership was approved and the certificate delivered August 1, 1907. On August 29, 1907, he died from wood alcohol poison, drunk by mistake for grain alcohol.

Two clear-cut general theories of the case are submitted. On behalf of the plaintiff it is alleged that the society, through its agent, the deputy head consul, had notice of Lawson's intemperate habits before he was admitted to membership in the so-

ciety, and that the answers to questions contained in the application on that subject were untrue; that the society, with such notice, having received the applicant's first dues and assessment, and having adopted him as a member and delivered the certificate, will be held to have waived objections to the answers and be estopped to rely on their untruthfulness in avoidance of the certificate; that the statement that the applicant had not consulted a physician within the last seven years was not wilfully false and was not material; and, lastly, that the insured's death was caused by wood alcohol taken by mistake for grain alcohol, and not by the intemperate use of intoxicating liquors.

The defendant controverted all of the foregoing propositions, and insisted that the by-laws constituted part of the contract, and affected Lawson with notice of their contents; that he warranted the truth of the answers contained in the application, and that his answer that he had not consulted a physician within the past seven years was material and untrue; moreover, that his answers touching his use of intoxicating liquors were not only material but wilfully false; that according to the provisions of the certificate and by-laws the truth of these several answers is made a condition precedent to a recovery upon the certificate; besides, that the right of recovery was barred by the fact that Lawson's death was due to the intemperate use of intoxicating liquors.

The trial court adopted the plaintiff's theory of the case, and, overruling the specific objections of the defendant, admitted evidence and instructed the jury accordingly, rejecting opposing instructions in support of the defendant's hypothesis.

As matter of fact the evidence leaves no room for doubt that Lawson's death resulted from accidental poisoning. He mistook wood alcohol for grain alcohol, and imbibed the former with fatal result. Wood alcohol is definitely classed by the authorities as a narcotic poison, and not as an intoxicating liquor.

Thus in *Faber* v. *Green,* 72 Vt. 117, 47 Atl. 391, speaking
of methyl or wood alcohol, the court says: "Such alcohol is
obtained by the destructive distillation of wood, is ranked as
a narcotic poison, and if drank either pure or adulterated, or
reduced many times its weight in water, other alcohol or fluid,
it kills the person drinking it. It was not intended to be used
as a beverage, and could not be so used. The laws against the
illegal traffic in intoxicating liquors were intended to include
only such liquors as could be used as a beverage (*Russell* v.
*Sloan,* 33 Vt. 656), and to construe the statute as prohibiting
the sale of other liquors similar in name, but so much more
poisonous in nature as to prevent their being used in that way,
would be giving it an extraneous and unnatural force not in-
tended. Nothing is better settled than that statutes should re-
ceive a sensible construction, such as will effectuate a legislative
intention, and, if possible, so as to avoid an unjust or absurd
conclusion." *Lau Ow Bew* v. *U. S.,* 144 U. S. 47, 36 L. Ed.
340, 12 Sup. Ct. 517.

There was plainly no evidence justifying an instruction
founded on the theory that Lawson's death was occasioned by
the intemperate use of intoxicating liquor, either directly or
indirectly.

The next assignment that we shall consider is based upon the
court's refusal to instruct the jury, as matter of law, that if
Lawson was asked whether within the last seven years he had
been treated by or consulted a physician in regard to personal
ailment, and answered it in the negative, and that such answer
was untrue or wilfully false, then they must find for the de-
fendant. In lieu thereof, the court told the jury that if they
should believe from the evidence that Lawson had within the
last seven years preceding his application been treated by or con-
sulted a physician in regard to a personal ailment, they must
find for the defendant, if they believed that such statement was
material or wilfully or fraudulently made.

We find no error in the ruling of the court on these instruc-

tions.   Indeed, the instruction given by the court followed literally the language of the Virginia statute, which declares that "no answer to interrogatories made by an applicant for a policy of insurance shall bar the right to recover upon any policy issued upon such application by reason of any warranty in said application or policy contained, unless it be clearly proved that such answer was wilfully false·or fraudulently made, or that it was material."   Pollard's Code, Biennial, 1908, sec. 28, p. 483; *Life Ins. Co. of Va.* v. *Hairston,* 108 Va. 832, 834, 851, 62 S. E. 1057.

In *Pudritzky* v. *Knights of Honor,* 76 *Mich.* 428, 43 N. W. 373, it was held that "a mere temporary ailment or indisposition which does not tend to weaken or undermine the constitution at the time of taking membership does not render a policy or certificate of insurance void."

The remaining and principal consideration which claims our attention arises upon the contention of the society that the certificate is null and void under the terms of the instrument itself, and the by-laws, by reason of the false answers in the application touching the applicant's habits with respect to intoxicants.   But the circuit court instructed the jury in accordance with the countervailing views of the plaintiff.

As we have seen, the answers relied on to forfeit the certificate were, in point of fact, not the answers of the applicant, but of the agent of the society while engaged under authority of the by-laws in organizing a new camp, and with full knowledge that they were untrue.   We have furthermore seen that at the date of the application and payment of the first dues and assessment the officers of the local camp all knew that Lawson was addicted to the intemperate use of intoxicants.

It is matter of common knowledge that the business of insurance companies is necessarily transacted through agents, and they are presumed to know better than the public with whom they deal the requirements of their companies.   Consequently, an applicant for insurance has a right to depend upon the su-

perior knowledge of the agent, and, in the absence of notice of limitations upon his powers, to assume that his authority is commensurate with the nature of the employment, and in good faith to act upon information imparted by the agent, and to follow his instructions in all matters pertaining to the preparation of the application. It would be, indeed, a mischievous doctrine to allow a beneficial society, whose officers and agents had induced a member to join by false and misleading representations as to the purport and effect of certain questions in the application for membership, after loss to make such misconduct the ground of forfeiture.

In *Planters Ins. Co.* v. *Myers*, 55 Miss. 479, 30 Am. Rep. 521, it is said that "the applicant may with safety rely upon the interpretations put upon the questions in the application by the company's agent."

In *Modern Woodmen of America* v. *Breckenridge*, 75 Kan. 373, 89 Pac. 661, 10 L. R. A. (N. S.) 136, 12 Am. & Eng. Ann. Cas. 636, it was held that a subordinate lodge of that order, with knowledge that a member had forfeited his certificate by the intemperate use of intoxicants, waives the right of the society to insist upon the forfeiture by continuing to receive his dues. Citing *High Court* v. *Schweitzer*, 171 Ill. 325, 49 N. E. 506, and *Modern Woodmen of Am.* v. *Lane*, 62 Neb. 89, 86 N. W. 943, where the court held: "The recognition of the continued validity of a certificate or policy, with knowledge of facts entailing a forfeiture, is a waiver of the forfeiture as a matter of law."

The cases of *Modern Woodmen of Am.* v. *Colman*, 68 Neb. 660, 94 N. W. 814, 96 N. W. 154; *Hoffman* v. *Supreme Council*, etc. (C. C.), 35 Fed. 255; and *McDonald* v. *Supreme Council*, etc., 78 Cal. 49, 20 Pac. 41, are cited to the same effect.

In the principal case the court said of the contention, that under the by-laws no local camp nor any of its officials shall have power to waive any of the provisions of the by-laws: "This has reference only to contractual waivers, and has no application

to a waiver by operation of law resulting from the subsequent acts of the camp."

So also on that point, in *McCarthy* v. *Piedmont Ins. Co.,* 81 S. C. 152, 62 S. E. 1, 18 L. R. A. (N. S.) 729, the court says: "Certainly until the delivery of the policy the applicant is not a member of the mutual association, and cannot be presumed to even know the constitution and by-laws of the association, much less to be bound thereby; and experience teaches that he acquires very little knowledge of the constitution and the by-laws after membership." And in conclusion (in the principal case) the court observes: "Forfeitures are not favored in law, and certainly a semi-benevolent association, such as defendant claims to be, should not be encouraged to rely upon a forfeiture, and the court is justified in laying its hand upon any act of the association showing an intention to waive a forfeiture." This case is sustained by numerous authorities cited in the note.

Thus, at page 640, many cases are collected for the proposition that "When a benefit society, with knowledge of the falsity of statements in an application for insurance with respect to the health or habits of insured, has demanded and received assessments, the society will be deemed to have waived the forfeiture for such misrepresentations." Among the citations is *Modern Woodmen of America* v. *Hicks,* 109 Ill. App. 27.

At the same page the annotator gives the following citation: "It is only where an agent is acting for his principal and within the scope of his authority that notice to the agent of matters that would affect his principal is binding upon the latter. Consequently, a benefit society is not estopped to insist upon the forfeiture of a benefit certificate because of false statements in the application with reference to the use of intoxicants by the applicant, merely for the reason that the physician who conducted the medical examination subsequently and while not employed by or discharging any duty for the society acquired knowledge of the falsity of statements in the application. *Wigham* v. *Supreme,* etc. (Oregon, 1908), 94 Pac. 968."

As we have seen in the instant case, however, the deputy head consul was acting within the scope of his authority in organizing the camp and taking the application; the camp physician was acting as agent of the company in making the special report; the clerk received the dues for the month of August; and all of these officials, while so acting in the line of their respective duties, had personal knowledge of the falsity of the statements in the application as to Lawson's habits in the use of intoxicating liquors.

In such case the converse of the rule laid down in the Oregon case is true, and the knowledge of these agents affects their principal with notice. Accordingly, it has been held: "Where, however, a medical examiner, acting as agent for an order, assumes to write out the answers to questions in an application for insurance upon his own knowledge of the facts rather than from the answers given by the applicant, the order is not in position to claim that the answers are untrue." Citing, among other cases, *Shotliff* v. *Modern Woodmen of Am.* 100 Mo. App. 138, 73 S. W. 326.

In that case it was said: "The by-law of the beneficiary association that 'no officer of this society, nor any local camp or officer thereof, is authorized or permitted to waive any of the provisions of these laws, or of any other laws of this society which relate to the substance of the contract for the payment of benefits between the member and the society,' has been held to have reference to a completed contract of insurance and not to be a limitation upon the powers of the agent of the association in preparing and accepting applications for insurance," and that "there is a waiver of objection to the answer of an applicant for insurance in a beneficiary association to the question as to insanity in his family when, on stating the facts, the examining physician who wrote the answer, and who is an officer of the association, advised him to answer, 'No,' which answer was written in the application."

In 29 Cyc. 189, 190, after discussing the power of a subordinate lodge, or its officers or agents, to bind the society within the scope of their authority, it is said: "If false answers by an applicant for membership are induced by an agent of the society, or the agent assumes to answer the. questions from his own personal knowledge and answers falsely, the society is estopped to assert the falsity as a ground for avoiding liability. And if the applicant omits to disclose material facts, on the agent's representation that they are immaterial, the society is likewise estopped."

A full discussion of the doctrine of waiver and estoppel, as applicable to policies of insurance, with collection of authorities, will be found in notes to *Haapa* v. *Met. L. Ins. Co.* (Mich), 16 L. R. A. (N. S.), 1165 *et seq.*

Without noticing the assignments of error in greater detail, we are of opinion that the case was correctly submitted to the jury on the law, and that their finding is sustained by the evidence.

*Affirmed.*