In this action plaintiff seeks to recover $3,000.00, as the beneficiary named in a benefit certificate issued by defendant to her husband Roy Shamblen.
The defendant is a fraternal beneficiary society. The certificate in question is dated January 30, 1926, and was issued to Shamblen as a member of a local camp of defendant at Hurricane, West Virginia. In answer to questions in the application upon which the certificate was issued, it is stated that both Shamblen and his wife resided in Hurricane; that his business was that of a traveling salesman, and that he performed no work or duties incident to any other occupation; that the application was for original membership; and that he had not within five years prior thereto been treated by a physician for influenza or consulted with and been treated by a physician in regard to "personal ailments". Shamblen died May 7, 1926, from miliary tuberculosis.
The proof shows that both Shamblen and his wife resided at Ripley; that he was town sergeant of Ripley; that he had been a member of defendant's camp at Ripley from April 1920 to November 1924, when he was suspended for nonpayment of dues; and that within two years prior to the application *Page 254 
in question he had suffered a severe attack of influenza during which he had been treated by a physician.
The answers were written by Roy Hylbert after discussing them with Shamblen. Hylbert was a "Deputy Head Consul" of the defendant with authority to organize new camps in seven counties of this State, for which he received compensation. At the time the application was prepared, Hylbert was attempting to organize a camp at Hurricane. He solicited Shamblen to become one of the charter members there in order to make up the necessary quota. He knew that some of the answers in the application were not true and in fact suggested their falsity himself. He read the answers to Shamblen after they were written, however, and Shamblen "acquiesced in them". Hylbert attempted an explanation of each misleading statement except the answer relative to influenza to which he did not refer.
The application contains the following covenant:
 "I have verified each of the foregoing answers and statements, from 1 to 30, both inclusive, and declare and warrant that they are full, complete, and literally true, and I agree that the exact literal truth of each shall be a condition precedent to any binding contract issued upon the faith of said answers and statements. I further agree that said answers and statements, together with this declaration and warranty, shall form the basis of the contract between me and Modern Woodmen of America, and are offered by me as a consideration for the contract applied for, and are hereby made and shall be deemed a part of any Benefit certificate that may be issued on this application; that this application may be referred to in said Benefit certificate as the basis thereof, and that they shall be construed together as one instrument; that inasmuch as only the Head Officers of the Society have authority to determine whether or not a Benefit certificate shall issue on this application, and as they act upon the written statements, answers, warranties, and agreements herein made, no statements, promises, knowledge, or information had, made, or given by or to the person soliciting, taking, or writing this application, or by or to any *Page 255 
person, shall be binding on the Society or in any manner affect its rights, unless such statements, promises, knowledge, or information be reduced to writing and presented to the Head Officers of the Society at or before the time a Benefit certificate shall be issued hereon; and I further agree that if any answer or statement in this application is not literally true, or if I shall fail to comply with and conform to any and all of the By-laws of the said Modern Woodmen of America, whether now in force or hereafter adopted, that my Benefit certificate shall be void."
The following conditions were made part of the Benefit certificate:
 "2. That the application for Beneficial membership in this Society made by the said member, a copy of which is printed and written hereon or is hereto attached, and in either case made a part hereof, is true in all respects, and that the literal truth of such application, and each and every part thereof, shall be held to be a strict warranty and to form the only basis of the liability of this Society to such member and to his beneficiary or beneficiaries, the same as if fully set forth in said Benefit certificate, and that if said application be not literally true in each and every part thereof, then said within Benefit certificate is, and shall be, as to said member, his beneficiary or beneficiaries, absolutely null and void."
 "4. It is agreed by the member holding said Benefit certificate that the said certificate, the Charter or Articles of Association, the By-laws of the Society, and the application for membership signed by the applicant, with all present and subsequent amendments to each thereof, shall constitute the agreement between the Society and the member. * * *
 "8. No officer of this Society, nor any local Camp, or officer, or member thereof, is authorized or permitted to waive any of the provisions of the By-laws of this Society which relate to the contract between the member and the Society, whether the *Page 256 
same are now in force or hereafter enacted. Neither shall any knowledge or information obtained by, nor notice to any local Camp, or officer or member thereof, or by or to any other person, be held or construed to be knowledge of, or notice to the Society, or the officers thereof, until after said information or notice be presented in writing to the Head Clerk of the Society."
One of the by-laws of the defendant provides:
 "Sec. 44. No Waiver of Any By-law. — No officer of this Society, nor any local camp, or officer or member thereof, is authorized or permitted to waive any of the provisions of the By-laws of this Society which relate to the contract between the member and the Society, whether the same be now in force or hereafter enacted. Neither shall any knowledge or information obtained by, nor notice to any local Camp or officer or member thereof, or by or to any other person, be held or construed to be knowledge of or notice to the Head Camp, or the officers thereof, until after said information or notice be presented in writing to the Head Clerk of the Society."
The society says that the answers in the application are by the contract of insurance made warranties; that the validity of the contract depended upon the literal truth of these answers, and that because of their falsity the policy is forfeited. The beneficiary replies that as the agent of defendant suggested the false statements, her husband had the right to rely upon his suggestion, and that Hylbert's act in making out the application incorrectly when he understood all of the facts is chargeable to the company. She relies upon such cases asDeitz v. Insurance Company, 31 W. Va. 851; Medley v. InsuranceCompany, 55 W. Va. 342; Woodmen v. Lawson, (Va.) 65 S.E. 509. These cases have little, if any, bearing on the present case. The beneficiary has failed to take notice of the evolution of insurance policies. The earlier policies contained no reference to the authority of the soliciting agent. An initial attempt to prevent the insured from relying on authority which the agent did not have, was made by placing a *Page 257 
limitation thereon in the policies. The cases above referred to held that this limitation was unavailing, because the insured had no notice thereof until the receipt of the policy, which was after the insurance contract was made. Beneficial companies then made another attempt to check reliance of applicants on subordinate agents, by enacting by-laws to the effect that no minor official should have the power to waive any provision in the by-laws or the policy. Courts held such by-laws ineffectual as notice on the theory that a mere applicant was not presumed to know the by-laws of an association; that he should not be bound thereby until after he became a member; that he did not become a member until delivery of the policy, and that the notice he then acquired also came subsequent to the formation of the insurance contract. For the same reason it was held that a limitation of the agent's authority in the by-laws applied only to contractual waivers as distinguished from "those conditions which relate to the inception of the contract." This theory is elaborately developed in Medley v. Insurance Company,supra, Woodmen v. Lawson, supra, and the cases therein cited. In pursuance thereof these cases continued the doctrine that if the applicant had no knowledge at the time the application was made of any limitation on the authority of the agent, the information of the agent was chargeable to the insurance company.
The instant case presents a further step in the making of the insurance contract, which was doubtless designed to obviate the very criticism of the above cases. Here the limitation on the agent's authority is placed not only in the by-laws of the society and in the benefit certificate, but also in the body of the application itself. Consequently, the theory that an applicant is not bound by subsequent notice, which supports the above cases, has no application here. Shamblen was given notice of the agent's limitation at the very inception of the contract. In fact he agreed in his application that no knowledge or information had or given to the person writing the application should be binding on the society unless presented to the head officers of the society. If authority be needed for the competency of such an agreement, see Aetna Life Insurance *Page 258 Company v. Moore, 231 U.S. 543; and for the right of the society to contest the policy despite knowledge of its agent of misrepresentation in the application, see Prudential InsuranceCompany v. Moore, 231 U.S. 560; Maryland Casualty Company v.Campbell, 255 F. 437 (440); May on Insurance (4th Ed.) sec. 137.
The evidence does not show whether Shamblen read the application. A failure to read it, however, cannot affect the duty to do so, as the agreement above referred to is contained in a paragraph immediately above his signature to which his attention was directed by the following admonition in large letters, "APPLICANT WILL PLEASE NOTE THIS CLAUSE". "The fact that the plaintiff may not have read the printed conditions of his policy, and relied, in ignorance of them, upon the implied or assumed powers of the agent, cannot help him. It was his business to know what his contract of insurance was, and there can be no difference in this respect between an insurance policy and any other contract. In the absence of fraud in the making of the same, and none is claimed in this case, the insured must be held to a knowledge of the conditions of his policy, as he would be in the case of any other contract or agreement." Cleaver v. Insurance Company, 65 Mich. 527 (532-3);Smith v. Insurance Company, 60 Vt. 682 (695); Joyce on Insurance, supra, sec. 1974.
The brief of the beneficiary makes special reference to the case of Parker v. Insurance Company, 79 W. Va. 576, which held that the company was estopped by the information of its agent. There, however, no notice whatever was given of a limitation on the agent's authority. Consequently, that case does not parallel this one.
The application is made a part of the insurance contract not only by the agreement of both parties thereto, but by section 8, Chapter 55A, Code. The answers are warranted to be true both in the application and in the policy. As already shown, some of the answers constituting affirmative warranties, are false. "If the affirmative warranty is false, it avoids the contract."Maupin v. Insurance Company, 53 W. Va. 557 (560); 32 C. J., sec. 493, p. 1273. "If the answers of the insured to the questions propounded to him on the application, *Page 259 
which are made a part of the policy, are by the policy warranted to be true, this removes their materiality from the consideration of the jury; and if any of the answers are false in fact, the policy is thereby forfeited, though the answers were made in perfect good faith." Schwarzbach v. ProtectiveUnion, 25 W. Va. 622. Marshall v. Insurance Ass'n., 79 W. Va. 121;Myers v. Insurance Company, 83 W. Va. 390; 37 C. J. sec. 177, p. 454-5; 14 R. C. L. 1030; Joyce on Insurance (2d ed.) Vol. 3, sec. 1970. The misrepresentation as to influenza is alone sufficient to avoid the policy. Harris v.Insurance Company, 86 W. Va. 638.
The judgment of the circuit court is reversed and the case remanded.
Reversed and remanded.