## VILES v. PRUDENTIAL INS. CO. OF AMERICA.

### No. 1599.

Circuit Court of Appeals, Tenth Circuit.
April 7, 1938.

Edmond L. Viles pro se.

Horace Phelps, of Denver, Colo. (James D. Benedict and Horace F. Phelps, both of Denver, Colo., on the brief), for appellee.

Before LEWIS and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

Viles brought this suit in the district court of Jefferson County, Colorado, against the Prudential Insurance Company for specific performance of certain provisions of a contract of life insurance. The cause was duly removed to the District Court of the United States for the District of Colorado.

In his complaint Viles alleged that on June 10, 1927, the Insurance Company issued to him its policy of life insurance for $10,000.00 in consideration of semiannual premiums of $111.30; that the policy provided for disability payments of $10.00 per month for each $1,000.00 of life insurance in the event of total and permanent disability before the age of 60; that he paid three semiannual premiums which continued the policy in force until January 10, 1929; that the policy proper contained the provisions for total and permanent disability set out in note [1]; that a rider which is set out in note [2] was at-

---

[1]Provisions as to Total and Permanent Disability: Waiver of premiums—Monthly income to the insured—Disability before age 60—"If the insured shall become totally and permanently disabled either physically or mentally from any cause whatsoever, to such an extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his or her lifetime, and if such disability shall occur at any time after the payment of the first premium on this policy while this policy is in full force and effect and the insured is less than sixty years of age and before any non-forfeiture provision shall become operative, the Company upon receipt of due proof of such disability, will grant the following benefits:

"(a) Waiver of Premiums: The Company will waive the payment of any premium or premiums the due date of which, as specified on the first page hereof, shall occur after receipt by the Company of said proof of such disability.

"(b) Monthly income to the insured: The Company will in addition to waiving premiums, pay to the Insured the Monthly Income specified on the first page hereof under the heading, Total and Permanent Disability Benefits. The first monthly payment shall be made immediately upon receipt by the Company of due proof of such disability and subsequent payments shall be made on the first day of each month thereafter. * * *"

[2] Supplementary Provisions as to Total and Permanent Disability. The following provisions are hereby made a part of the clause headed Provisions as to Total and Permanent Disability, contained in this Policy:

"If due proof of total and permanent disability has not been previously furnished, and if the insured shall furnish due proof that he has been totally disabled either physically or mentally, from any cause whatsoever to such an extent

tached to the policy; that in the month of October, 1928, by reason of the loss of the sight of both eyes, he became totally disabled and unable to pursue his regular line of work and since that time has been continuously so disabled; that he furnished the Insurance Company "due proof of his total disability and has demanded payment of the disability benefits under said contract" and that the Insurance Company has repeatedly refused to pay such benefits.

Viles prayed for a decree specifically enforcing the insurance contract in the following particulars:

"(a) Waiver of premiums since December 10th, 1928;

"(b) Reinstatement of Policy Contract No. 5866783, as of December 10th, 1928;

"(c) And to pay plaintiff $100.00 per month since October, 1928, with interest at the rate of 6% per annum; said payments of $100.00 per month to continue as long as plaintiff is totally disabled."

The Insurance Company filed a motion to make the complaint more specific "by stating when and upon what date * * * plaintiff furnished proof of disability," and a demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action.

The motion to make the complaint more specific was sustained and the demurrer was overruled.

Thereafter, Viles filed a bill of particulars in which he set out that in the early part of 1929 he went to the Insurance Company's Denver office and explained his disability to the agent in charge and was informed by such agent that the disability would not be considered as total and permanent within the meaning of the policy; that he accepted and relied on the agent's statement until the early part of 1935 when he learned that the Insurance Company was paying total and permanent disability benefits to another policyholder who had better vision than he; that on March 25, 1935, he again went to the Denver office of the Insurance Company and applied for disability benefits and was given forms, one to be executed by himself and one by his physician; that on March 25, 1935, he executed and delivered to the Denver office his application for disability benefits to be forwarded to the Home Office of the Insurance Company; that on April 5, 1935, he delivered to the Denver office the physician's form executed by Doctor Donald O'Rourke, of Denver, Colorado, an eye specialist, "which was due proof of plaintiff's total and permanent disability while this policy No. 5866783 was in full force and effect."

In his bill of particulars Viles further alleged that the Insurance Company had denied liability on the ground that the disability did not occur while the policy was in full force and effect and at no time had denied liability on the ground that proof of disability was not furnished before the policy had lapsed for nonpayment of premiums.

The Insurance Company filed its motion to strike all of the bill of particulars except the allegations that proof of disability was made in March and April, 1935.

The Insurance Company also filed a demurrer to the complaint as supplemented by the bill of particulars.

---

that he was rendered wholly and continuously unable to engage in any occupation or perform any work for any kind of compensation of financial value during a period of ninety consecutive days, and if such disability shall occur after the payment of the first premium on this Policy, while this Policy was in full force and effect and the Insured was less than sixty years of age and before any non-forfeiture provision became operative, such disability shall be presumed to be permanent and the Company will upon receipt of such proof grant the disability benefits provided, subject to all other provisions of said clause including those relating to proof of continuance of disability.

"Any disability benefits granted in accordance with the provisions of the clause headed Provisions as to Total and Permanent Disability, including these provisions will be granted from the commencement of total and permanent disability as defined, any other provisions in said clause to the contrary notwithstanding.

"These provisions are granted in consideration of the payment of an extra semi-annual premium of $7.50 in addition to the extra premium specified for the provisions as to Total and Permanent Disability, which additional extra premium is included in the amount of the premium stated on the first page of this Policy and is payable subject to the same conditions as apply to the payment of the extra premium specified for said provisions as to Total and Permanent Disability."

The court sustained the motion to strike and the demurrer and entered an order dismissing the bill of complaint.

Viles has appealed.

The Insurance Company contends that under the provisions of the policy the right to disability benefits, including waiver of premiums, accrues from and after the date of receipt of due proof of disability, and since it affirmatively appears that due proof was not received by it on or prior to January 10, 1929, the end of the grace period, the policy lapsed for non-payment of the premium due on that date and the demurrer was properly sustained.

If Viles' claim rested on the provisions for disability benefits in the policy proper, this position would be well taken, but those provisions were substantially modified by the rider attached to the policy for which an additional consideration was paid. This rider specifically provides that if due proof of total and permanent disability has not been previously furnished and the insured shall furnish due proof that he has been totally disabled to such an extent that he was wholly and continuously unable to engage in any occupation or perform any work for any kind of compensation of financial value during the period of 90 consecutive days and such disability shall occur after the payment of the first premium while the policy is in full force and effect and the insured is less than 60 years of age and before any nonforfeiture provision becomes operative, such disability shall be presumed to be permanent, and upon receipt of such proof the Insurance Company will grant the disability benefits provided. It further provides "any disability benefits granted in accordance with the provisions of the clause headed 'Provisions as to Total and Permanent Disability' * * * will be granted from the commencement of total and permanent disability as defined, any other provisions in said clause to the contrary notwithstanding." (Italics ours.)

The policy proper provides as one of the benefits the waiver of premiums and the rider provides that such benefit will be granted from the commencement of total and permanent disability.

We conclude that under the rider Viles was entitled to the disability benefits, including waiver of premiums, from the date of the commencement of total and permanent disability. Contracts of insurance with disability provisions much less favorable to the insured than the one involved here have been so construed.[3]

While the question of whether Viles made his proof within a reasonable time was not urged by the Insurance Company, we deem it of such importance as to merit consideration.

So far as this record discloses, the policy contained no provision limiting the time within which due proof of disability should be furnished. Absent a provision in the policy fixing a time limit for making proof of disability the law required Viles to make such proof within a reasonable time.[4]

Viles alleged in his complaint that he furnished the Insurance Company with due proof of his total disability. In his bill of particulars, he alleged that in the early part of 1929, after he had become totally disabled, through the loss of eyesight, he explained his disability to the Insurance Company's agent at its Denver office, and was informed by such agent that his disability would not be considered total and permanent within the meaning of the policy; that he accepted and relied on such statement until early in 1935 when he came in contact with another policyholder who was receiving monthly benefits for loss of eyesight who had better vision than he and that in March and April, 1935, he made due proof on forms furnished him by the Insurance Company.

While the bill of particulars does not allege that the agent was a general agent, the fact that the large life insurance com-

---

[3] See Minnesota Mutual Life Ins. Co. v. Marshall, 8 Cir., 29 F.2d 977; Lydon v. New York Life Ins. Co., 8 Cir., 89 F. 2d 78, 80, 81, 82; Home Life Ins. Co. v. Keys, 187 Ark. 796, 62 S.W.2d 950, 952; Prudential Ins. Co. v. Gray, 230 Ala. 1, 159 So. 265, 266; Life Ins. Co. of Virginia v. Williams, 48 Ga.App. 10, 172 S. E. 101; Horn's Administrator v. Prudential Ins. Co., 252 Ky. 137, 65 S.W. 2d 1017, 1020.

[4] Metropolitan Life Ins. Co. v. Frankel, 58 Ind.App. 115, 103 N.E. 501, 504; Lewis v. Connecticut General Life Ins. Co., Tex.Civ.App., 94 S.W.2d 499, 501; Metropolitan Life Ins. Co. v. People's Trust Co., 177 Ind. 578, 98 N.E. 513, 41 L.R.A.,N.S., 285; Metropolitan Life Ins. Co. v. Carroll, 209 Ky. 522, 273 S.W. 54, 55, 56. See, also, Lydon v. New York Life Ins. Co., supra.

panies maintain in cities the size of Denver, general offices with general agents in charge, is of such common knowledge that courts are warranted in taking judicial notice thereof.[5]

The Insurance Company is bound by the acts of its general agents within the scope of their real or apparent authority.[6]

While the alleged conversation between Viles and the Insurance Company's Denver agent in 1929 was not sufficient to constitute due proof of disability it was proper as explanatory of the failure of Viles to make due proof more promptly.[7] The question is not whether the agent had authority to deny liability on the state of facts respecting the disability given him by Viles, but rather whether the action of the agent, upon which Viles was entitled to rely, was sufficient excuse for his not having made timely formal proof of his disability.

As to what constitutes reasonable time or unreasonable delay depends upon the facts and circumstances of each particular case. It is the general rule that what constitutes reasonable time and unreasonable delay are questions of fact. Where, however, the facts are not in dispute and there is no room for differing inferences the question is one of law.[8]

We are of the opinion that the issue of reasonable time can better be determined by the trial court after the evidence has been adduced before it, in the light of all the relevant facts and circumstances.

The decree of dismissal is reversed with instructions to reinstate the complaint, overrule the demurrer and grant leave to Viles to file an amended complaint wherein he may plead, in addition to other essential allegations, the facts with reference to the proof of disability, the time of making same, and the reasons for the delay.

Let the costs of this appeal be assessed against the Insurance Company.

Reversed.

5 Modern Woodmen of America v. Lawson, 110 Va. 81, 65 S.E. 509, 511, 135 Am.St.Rep. 927; Ruggles v. American Central Ins. Co., 114 N.Y. 415, 21 N.E. 1000, 11 Am.St.Rep. 674.

6 Couch, Cyc. of Insurance Law, vol. 2, § 525b; Life Ins. Co. of Virginia v. Williams, 48 Ga.App. 10, 172 S.E. 101, 106; Smaldone v. President, etc., of Ins. Co. of N. America, 162 N.Y. 580, 57 N.E. 168; Reserve Loan Life Ins. Co. v. Compton, 190 Ark. 1039, 82 S.W.2d 537, 540; Gaines v. Berkshire Life Ins. Co., 228 Mo.App. 319, 68 S.W.2d 905, 907; Cronin v. Coyle, 6 Cal.App.2d 205, 44 P. 2d 385, 388; Ruggles v. American Central Ins. Co., supra; Modern Woodmen of America v. Lawson, supra.

7 Modern Woodmen of America v. Lawson, 110 Va. 81, 65 S.E. 509, 511, 135 Am.St.Rep. 927; Fidelity & Casualty Ins. Co. v. Mountcastle, Tex.Civ.App., 200 S.W. 862, 867.

8 Metropolitan Life Ins. Co. v. Frankel, 58 Ind.App. 115, 103 N.E. 501, 504; Gill v. Hale & Kilburn Co., 6 Cir., 257 F. 906, 909; National Life Ins. Co. v. Bean, 15 Ga.App. 661, 84 S.E. 152, 153; Ætna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S.W. 523; People's Mutual Acc. Ass'n v. Smith, 126 Pa. 317, 17 A. 605, 606, 12 Am.St.Rep. 870.