## NEW ENGLAND MUT. LIFE INS. CO. OF BOSTON, MASS., v. COHEN.*

### No. 256.

Circuit Court of Appeals, Second Circuit.
April 6, 1936.

Frederick E. Draper, of Troy, N. Y., for defendant-appellant.

Coplin Yaras, of Albany, N. Y., for plaintiff-appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This is a removed action which was originally brought in the New York Supreme Court, Albany county, by service and summons on November 2, 1934, by a citizen of New York against a Massachusetts corporation to recover disability payments alleged to be due and unpaid according to the terms of an insurance policy issued by the defendant to the plaintiff upon his life.

The policy, dated May 29, 1924, was written upon the annual premium basis, and all premiums up to and including that

payable in 1928 were paid in full. No premium was paid in 1929 or thereafter.

The alleged failure of the defendant to comply with the provisions of the following clause in the policy is the basis of this suit.

"Waiver of Premiums, and Income during Total and Permanent Disability.—If the Insured, before attaining the age of sixty-five years, provided premiums have been duly paid and this Policy is then in full force, becomes physically or mentally incapacitated to such an extent as to be wholly and permanently unable to engage in any occupation or profession or to perform any work for compensation, gain or profit; * * * and after such disability has existed for ninety days, shall furnish due proof thereof to the Company, at its Home Office, the Company will waive the payment of any premium, thereafter due upon this Policy during the continuance of such disability. Upon acceptance of such proof, and during the continuance of such disability, the Company will also pay to the Insured an income of Fifty Dollars a month.

"The Company shall have the right at any time, but not oftener than once a year, to require due proof by an examination of the Insured by its duly appointed Medical Examiner, of the continuance of the disability. If the Insured shall so far recover as to be able to engage in any occupation or profession or to perform any work for compensation, gain or profit, no further premium will be waived nor monthly income paid; and all premiums thereafter falling due shall be paid by the Insured, in conformity with the terms of the policy. * * *"

The policy also provided that "No waiver of the conditions of this policy shall be valid unless made in writing and signed by the President, Vice-President, Secretary or an Assistant-Secretary of the Company."

The plaintiff was a fur cutter who also sold insurance as an agent for the defendant and for the Union Mutual Life Insurance Company of Portland, Me. He lived and worked in Albany and Troy, N. Y., most of the time after the policy was issued until his health began to fail in January, 1928, because of pulmonary tuberculosis. In March of that year he consulted Dr. Rossman in Albany, and was advised to have X-ray pictures taken of his chest at the Albany Hospital. That was done by Dr. Howard at the hospital on May 6, 1928. He never consulted Dr. Rossman after that. It was shown that the use of X-ray photography was the best way "to disclose the presence of the disease and to outline its extent and distribution." The X-ray, as interpreted by Dr. Howard on the day it was taken, showed, "Parenchymatous infiltration in the upper third of the left lung and in the supra and infra clavicular regions of the right lung, suggesting tuberculosis."

The plaintiff remained at the Albany Hospital for about twenty-four hours at this time. He later spent several weeks in the summer of 1928 in a sanitarium for the treatment of tuberculosis in the Catskill Mountains. At the trial the doctors already named and a Dr. Corning, who first examined him in August, 1934, all testified in behalf of the plaintiff that he was suffering from tuberculosis that totally incapacitated him from doing any kind of work. The evidence showed that tuberculosis of the chest and lungs is often arrested, and, when it has been, the afflicted person often becomes able to work. There was evidence that the plaintiff had not improved, and that he had not been able to work since May 6, 1928, but the contention that such condition was permanent was rather thinly supported by the medical evidence. However that may be, we do not think the judgment can stand anyway in the face of lack of due proof of disability while the clause was kept in force by the payment of premiums.

A condition precedent to the liability of the defendant to waive the payment of future premiums and make disability payments under the clause above quoted was the receipt of due proof at its home office of the total and permanent disability of the plaintiff and its then duration for at least ninety days. What was actually done to comply with this requirement was not in dispute.

In January, 1929, the plaintiff, who had obtained a loan on his policy and had sent it to the defendant as security for the loan, told one Spensley, a special agent of the defendant at Albany, that he was sick, and asked him how to make a claim for disability under the policy. Following directions from Spensley, the plaintiff presented himself at the office of Allen & Schmidt, general agents of the defend-

ant in New York City on February 1, 1929. He asked for the manager, and was given an interview with a man whose name he did not know, but who said he was an assistant manager. This man, after the plaintiff informed him that he was suffering from tuberculosis and wanted to make a disability claim under his policy, told the plaintiff that a medical examination was required, and directed him to return the next day. This the plaintiff did, and was then examined by Dr. Weeden, one of the defendant's chief medical examiners in New York. After that the plaintiff asked the assistant manager if he had to sign any paper, and was told, "We will let you know all about it." From February 2, 1929, when this occurred, until this suit was brought, the plaintiff filed no other proof of disability, nor did he receive any communication from or in behalf of the defendant in respect to the claim he had made.

It appeared that Dr. Weeden sent his report, a part of which was in the form of questions and replies made by the plaintiff, which Dr. Weeden had written down and the plaintiff had signed, to the defendant's home office in Boston, Mass. This report in the part signed by the plaintiff stated that he was suffering from moderate pulmonary tuberculosis which had continued from April 1, 1928. Dr. Weeden's description of what he found in this respect was: "Very few signs found in the lungs but there is some diminished breathing and some fine rales over right lung posteriorly especially at base."

On February 19, 1929, an assistant secretary of the defendant at Boston wrote Allen & Schmidt acknowledging the receipt on February 4th of Dr. Weeden's report and stating that a special report on the plaintiff had been obtained showing, among other things, that "He has not been laid up in bed and only a short while ago claimed that he put through a real estate deal which netted him a profit. He is said not to be following his trade this season. This report, which is given you in confidence, and is not to be used, appears to agree with the personal opinion of your agent Mr. Spensley. To date, there is no evidence that the insured is either totally or permanently disabled, as he has been following various occupations up to the present time. It would appear that there are plenty of sanitariums to which he could go for treatment, and that he should do so. When he has taken this step or has given up all manner of work and submits to regular treatment and rest, and such condition has existed for ninety days, we would then be willing to again take the case under consideration." In this way the matter of proof of disability was left.

There has been some question made about the method of proof being insufficient on the ground that the plaintiff made it to Allen & Schmidt instead of to the defendant at its home office, as the policy required, but we will assume for present purposes that there was no defect in this regard, though we reserve decision on that point. Taking such proof of his condition as he presented to be proof to the defendant, we think it wholly inadequate to show total and permanent disability. Indeed, there was a total absence of such proof. What he then signed did not state that he was disabled totally or permanently, nor did Dr. Weeden's examination show him to be so. The most that can be said is that the plaintiff gave the defendant notice of a claim for disability which did not fulfill the policy requirement of proof that the disability claimed was total and permanent and had been for ninety days. It did not even claim that to be the fact. Strictly we have no issue before us of what is due proof of total and permanent disability since there was no proof at all of such a condition forwarded to the defendant, nor does the record show that any was given Allen & Schmidt. All the plaintiff did was to present himself as evidence of his disability. That was the best evidence of his actual condition, but whether it was any evidence of total and permanent disability depends upon what it disclosed as to his then state of health. That is shown by Dr. Weeden's report to have been proof only of a tubercular condition. Nothing as to the existence, extent or future duration of any disabling effect upon the plaintiff within the policy disability clause was even indicated.

Liability under the disability clause did not arise as soon as the insured should be actually so disabled as to give him the right to make due proof of disability. Such due proof was as necessary to establish liability as the fact of disability itself. Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416. For this reason no liability on the part of the defendant was estab-

lished to be enforced in this action, and it becomes unnecessary to consider any other exception.

The defendant moved for a nonsuit and dismissal of the complaint at the close of all the evidence on the ground that the plaintiff had failed to prove any cause of action. It also then moved for a directed verdict. Decision on both motions was reserved until after the verdict was received. The motions were then overruled and judgment entered on the verdict with exceptions allowed the defendant. As this judgment must be reversed because the evidence was insufficient as a matter of law to support the verdict, and the verdict was taken subject to decision upon the motions made, the complaint should now be dismissed. Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636.

Judgment reversed, and complaint dismissed.