## GRIFFITHS v. MASSACHUSETTS MUT. LIFE INS. CO.

No. 258.

Circuit Court of Appeals, Second Circuit.
April 4, 1938.

Rayford W. Alley, of New York City (Sidney Friedman, Asa W. Jennings, and Herbert J. Deitz, all of New York City, of counsel), for appellant.

Cabell, Ignatius & Lown, of New York City (Hartwell Cabell and Joseph S. Catalano, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal by the plaintiff from a judgment, summarily dismissing her complaint upon three policies of life insurance taken out by her husband, Butler Griffiths, in which she was named as beneficiary; each contained what is commonly known as a "disability clause", which gave the insured in case of his "total and permanent disability" a fixed monthly payment, and relieved him of further premiums. Griffiths failed to pay the quarterly premium due upon one of the policies in July, 1934, and in September of that year surrendered it, and accepted the value of the "paid-up" insurance available to him. The other two policies remained in force, but were surrendered at the same time as the first, also upon receipt of their surrender value less loans. The plaintiff joined in each surrender. The case is based upon the theory that at the time of the surrenders Griffiths would upon proof of claim have been entitled to disability payments and to the cessation of premiums, and that he remained so until his death in December, 1934; but that in two letters between him and one, Coleman, an officer of the defendant, and in a talk between Coleman and Griffiths's brother, Leon, the defendant misrepresented its liability; and that Griffiths relied upon these misrepresentations when he surrendered the policies. If so, the surrenders should be cancelled and the policies treated as in force when he died. The affidavits upon which the summary judgment was granted were in substance as follows.

Griffiths was an accountant and had fallen sick of arthritis in the autumn of 1932; he had been bedridden for two months and it may be taken that he was "totally disabled" within the meaning of the policies. He had known familiarly Coleman, who was the cashier of the defendant's New York agency, and on December 30th of that year he wrote him as follows: "Will you please give me some information on the disability provisions in my policies with the Massachusetts Mutual. They are all in a safe deposit in Bklin, hence my bothering you. I have been laid up in bed for two months with arthritis and am still there and if there are any forms to fill out to protect my interests or how is the matter handled?" (sic.) Coleman answered the next day: "I * * * regret exceedingly to learn that you have been laid up in bed for the past two months with arthritis. I hope, however, that you will soon be restored to good health. Referring to your inquiry concerning the disability clause in your policies * * * I beg to state the disability provision covers you only in case you become permanently and totally disabled and thus under the circumstances you would not be entitled to any disability benefits thereunder." After receiving this answer, Griffiths filed no proof with the defendant and did nothing further, although he began to receive a total disability allowance from another company as early as March of 1933, and although when he wrote he was already permanently disabled by a disease of the heart of which he finally died. His brother Leon, who at one time had been in the defendant's employ, had come to know Coleman. In June of 1933, Leon Griffiths went to the defendant's New York agency on personal business

and chanced upon Coleman. Knowing that his brother was then seriously ill, he asked Coleman whether he was not entitled to the disability benefits under his policies, and Coleman answered that it was "too bad", but that he was not.

The surrender of the policies in September, 1934, finally cancelled them, unless it was induced by some misrepresentations of the insurer which misled Griffiths into supposing that he must keep on paying premiums, and was not entitled to disability payments. We shall assume that had he known the truth, he would not have surrendered them; and although we are not satisfied that Coleman had authority to speak for the defendant in the transaction, we shall also assume that he had. The exchange of letters in December, 1932, gave Griffiths no reason to believe that if he were permanently disabled, the disability clause did not cover him. He did not suggest to Coleman that he would not recover; he had been in bed only two months, and arthritis does not generally cripple a man totally and permanently. Coleman answered his inquiry as it read: it was clear that he did not suppose Griffiths to be permanently ill. He hoped he might soon get well; and however perfunctory such an expression might be, it would not have been made in that form to a man who had said that he was permanently disabled. Moreover, Coleman in effect declared that if Griffiths was permanently disabled, the policies protected him; it was a completely honest answer and an insurer is not charged with an affirmative duty to go further. Iowa Life Insurance Co. v. Lewis, 187 U.S. 335, 350, 351, 23 S.Ct. 126, 47 L.Ed. 204; Minnesota Mutual Life Insurance Co. v. Cost, 10 Cir., 72 F.2d 519, 521; Williston, Contracts, § 758. Had Griffiths really supposed himself incurably ill, he had the necessary information to assert his rights. It is hard to believe that he did think so, though it must be admitted that it is also hard to believe that he did not, in view of the disability payments made to him in March, 1933. But if it be true that Coleman's answer really misled him, the fault cannot be laid at the defendant's door. Leon Griffiths's talk in June, 1933, added nothing except that it then appeared that the insured's illness had continued for six months more. That could not have signified to Coleman that Griffiths thought himself permanently disabled, because with Coleman's letter before him, telling him his rights, he had paid premiums upon at least two of the policies. Why should Coleman have inferred that his illness had become permanent? Even after eight months arthritis is not necessarily incurable; Leon Griffiths did not suggest that it had become so in his brother's case; the inquiry was more naturally understood as directed to any rights he might have while he remained ill. In any event Coleman's answer could not affect the rights of the parties except as Leon might repeat it to his brother; and if he should repeat it, Coleman had no reason to assume that the insured would take it as more than a repetition of what he had written in December. Griffiths alone could know how permanent his arthritis had become, and might be trusted to act upon the true information that Coleman had given him about the policies.

In all that we have said we have assumed that Griffiths was in fact "totally and permanently disabled", and this we must do upon motion for summary judgment. If that alone entitled him to the disability payments, it would have made no difference whether he was misled by misrepresentations of the insurer or not; the surrender would in any case have been without consideration, because no further premiums were due and the insurer was already unconditionally held, not only to the payments at Griffiths's death, but to the disability payments meanwhile; the existing arrears of these were much greater than the sums paid on surrender. But the policies were not of that kind; the privileges in question depended, not only upon the fact of disability but upon proof of that disability, filed with the insurer at its home office. Until the insured complied with that condition, the insurer was not bound, and the payment of the surrender value was an adequate consideration for the release of the insured's rights. Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416; New England Mutual Ins. Co. v. Cohen, 2 Cir., 83 F.2d 163.

Judgment affirmed.