## MUTUAL LIFE INS. CO. OF NEW YORK v. DRUMMOND.

### No. 11607.

Circuit Court of Appeals, Eighth Circuit.

May 2, 1940.

Rehearing Denied May 24, 1940.

James C. Jones, Jr., of St. Louis, Mo. (James C. Jones and Web A. Welker, both of St. Louis, Mo., and Louis W. Dawson, of New York City, on the brief), for appellant.

Lyon Anderson, of St. Louis, Mo. (Lambert E. Walther and Leahy, Walther, Hecker & Ely, all of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, THOMAS, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a decree in favor of the insured (plaintiff-appellee), who brought a declaratory judgment suit to establish her rights to disability benefits under the provisions of a $5,000 life policy issued to her at age 16 by the appellant company on July 16, 1927.

The policy, which was an Illinois contract, contained the following pertinent provisions:

"The Mutual Life Insurance Company of New York * * * if the Insured is totally and presumably permanently disabled before age 60 will pay to the Insured Fifty Dollars monthly during such disability, increasing after five and ten years continuous disability, besides waiving premium payments, all upon the conditions set forth in Section 3.

* * *

"Section 3. Benefits in Event of Total and Permanent Disability before Age 60.

"Total Disability.—Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the Insured to follow a gainful occupation.

"Permanent Disability.—Total disability shall, during its continuance, be presumed to be permanent;

"(a) If such disability is the result of conditions which render it reasonably certain that such disability will continue during the remaining lifetime of the Insured; or,

"(b) If such disability has existed continuously for ninety days.

"When Benefits become Effective.—If, before attaining the age of sixty years and while no premium on this Policy is in default, the Insured shall furnish to the Company due proof that he is totally and permanently disabled, as defined above, the Company will grant the following benefits during the remaining lifetime of the Insured so long as such disability continues.

"Benefits. (a) Increasing Income.—The Company will pay a monthly income to the Insured of the amount stated on the first page hereof ($10 per $1,000 face amount of Policy), beginning upon receipt of due proof of such disability and increasing after sixty consecutive monthly payments have been made to one and one-half times such amount and after sixty further consecutive monthly payments have been made to twice such amount at which it shall remain while total and permanent disability continues.

"(b) Waiver of Premium.—The Company will also, after receipt of such due proof, waive payment of each premium as it thereafter becomes due during such disability."

The policy had the following rider endorsed upon it:

"Supplementary Benefits to Section Entitled 'Benefits in Event of Total and Permanent Disability before Age 60.'

"Benefits if Proof Delayed and No Premium in Default.—If, while no premium is in default, the proof furnished the Company under the section providing for 'Benefits in Event of Total and Permanent Disability before Age 60' is such as to entitle the Insured to the Disability Benefits provided for therein, and if due proof is also furnished the Company that such disability has been continuous since its beginning, the Company will;

"(a) Begin the monthly income payments provided for in such section as of the end of the first completed month of such disability if earlier than the date of receipt of such proof instead of as of the date of receipt of such proof, and,

"(b) Return any premium due after the beginning of such disability which has been paid during the continuance thereof.

"Benefits if Premium in Default not over Six Months.—If, not later than six months after the due date of any premium in default and provided no previously due premium is also in default, due proof is received by the Company that the Insured was totally and permanently disabled, as defined in the section entitled 'Benefits in Event of Total and Permanent Disability before Age 60', at the date when such premium in default fell due, and has been continuously so disabled since said due date, the Policy will be reinstated

without evidence of insurability and the waiver of premium and disability income benefits shall be the same as if such default had not occurred."

The premium due July 16, 1933, on this policy was not paid when due, and during the grace period the insured requested the company to reduce the amount of insurance to $1,000. This request was granted by the company and evidenced by an endorsement dated August 23, 1933, stamped upon the policy, reading as follows: "Reduction of Face Amount of Policy.—It is understood and agreed that commencing the 16th day of July 1933, the face amount of this policy is reduced from Five Thousand Dollars to One Thousand Dollars and that the amounts of any and all other pecuniary benefits accruing under this policy are reduced in like proportions; and that from said date the premium due on this policy is changed to Twenty-one Dollars and fifty-six cents falling due annually on the 16th day of July in each year." The company paid to the insured the cash surrender value of the $4,000 of insurance released by her, except so much of the cash value as was applied to the payment of the premium due July 16, 1933, on the policy as reduced.

On April 9, 1937, the insured furnished to the company proofs that she had become totally and presumably permanently disabled on February 10, 1933, when $5,000 of insurance was in force. The company, after investigation, allowed her claim as of July 30, 1933, when $1,000 of insurance was in force, refunded to her the premiums which she paid in 1934, 1935 and 1936, and paid to her $10 for each month of disability beginning with August 30, 1933. The position of the company relative to the insured's claim is disclosed by its letter to her dated May 17, 1937, as follows:

"Dear Miss Drummond:

"The proofs which have been submitted to this Company in your behalf, in our opinion, are not sufficient to show you to have been totally and permanently disabled within the meaning of the terms of the policy prior to July 30, 1933; neither has the Company obtained other information which shows you to have been totally and permanently disabled prior to that date. Therefore, we have approved the claim in accordance with the terms of the policy contract allowing monthly disability benefits from August 30, 1933, the end of the first completed month of total and permanent disability. The above statement of our reasons for failing to allow disability benefits prior to the date mentioned above, is, of course, made without prejudice to the right of the Company to assert other reasons for disallowing the claim prior to that date.

"It is always this Company's desire to fulfill its part of the policy contract and not withhold or deny the payment of any disability benefits to which you are justly entitled. Should you have additional evidence or proof which you wish to submit of total and permanent disability prior to July 30, 1933, we shall be very glad to receive and review the same.

"The request that your policy be reinstated to its original status as it was before you requested the Company to reduce the amount of insurance under this policy on August 14, 1933, has been given careful consideration, but we cannot reinstate the insurance which was surrendered. Therefore, our approval of your claim is on the basis of $1,000. insurance."

The insured then brought this suit to secure a declaration that she had become totally and permanently disabled within the definition of the policy on February 10, 1933, and was entitled to the benefits provided by the policy before the amount of insurance was reduced. The company denied that she had become so disabled before July 30, 1933, and asserted that no claim for disability benefits had accrued until after the policy had been reduced and its benefits proportionately diminished.

The trial court found that the insured had become totally and permanently disabled on February 10, 1933, as the result of a nervous breakdown diagnosed as psychoneurosis. It also found that the insured did not learn that her policy contained provisions for disability benefits until the early part of 1937. The court concluded that she was entitled to the disability benefits provided by her policy as it was originally written.

 The company challenges the sufficiency of the evidence to sustain the finding of total and permanent disability as of February 10, 1933, upon the ground that the evidence conclusively shows that the insured was gainfully employed up to and including July, 1933. We think there is no merit in this contention. The insured was a student at the St. Louis University and had a "fellowship" which yielded her twenty-five dollars a month while she was

enrolled as a student. There is no basis for concluding that what she received because of this fellowship was anything more than a gratuity to assist her in maintaining herself while in attendance at the college. The finding of the court below that the insured was totally and permanently disabled on February 10, 1933, which is based upon conflicting evidence and is not clearly erroneous, is binding upon this Court.

The vital question in this case is whether the insured's right to disability benefits accrued on February 10, 1933, when she became disabled, or accrued on April 9, 1937, when she furnished proofs of disability to the company. In this connection, it is to be noted that the reduction agreement of August 23, 1933, did not purport to affect disability benefits which had accrued prior to July 16, 1933. If the furnishing of proofs by the insured was necessary before any liability of the company for disability benefits accrued, the court below reached an incorrect conclusion and the decree should be reversed.

■ The rule seems to be that the liability of an insurer for disability benefits ordinarily accrues at the time when the insured is entitled to have such benefits commence. Generally speaking, there are two classes of disability clauses: One, those in which benefits are conditioned upon the furnishing of proof and are to commence from the time that proofs are furnished; and, two, those in which benefits are conditioned upon the furnishing of proof, but which provide that the benefits are to commence from the date that the disability occurs. Under a clause of the first class, the furnishing of proofs is a condition precedent to liability and the right of the insured to the benefits provided does not accrue until proofs are furnished.[1] Under a clause of the second class, the occurrence of the disability is ordinarily held to be the event which creates the right of the insured to the benefits promised in the policy, and the furnishing of proofs by the insured to the company is only a prerequisite to the actual receipt of such benefits.[2]

■ The policy in suit, in the absence of the rider, had a disability clause of the first class because the benefits provided for were to commence only with the furnishing of proof. The addition of the rider, however, brought the disability clause of the policy within the second class, in which the right of the insured to the disability benefits accrues as of the date of disability. The company itself recognized this in its dealings with the insured, as evidenced by its letter of May 17, 1937, above quoted. There would, under the circumstances, be no justification for denying the insured the benefits of the insurance which was in force at the time that her disability occurred. The reduc-

---

[1] Illustrative cases involving clauses of the first class are: Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416; Griffiths v. Massachusetts Mut. Life Ins. Co., 2 Cir., 96 F.2d 57; Sanderson v. Postal Life Ins. Co., 10 Cir., 87 F.2d 58; Johnson v. Mutual Life Ins. Co., 4 Cir., 70 F.2d 41; Avery v. New York Life Ins. Co., 5 Cir., 67 F. 2d 442; Egan v. New York Life Ins. Co., 5 Cir., 67 F.2d 899; Orr v. Mutual Life Ins. Co., 8 Cir., 64 F.2d 561; New England Mut. Life Ins. Co. v. Cohen, 2 Cir., 83 F.2d 163; Feinberg v. New York Life Ins. Co., Mo.App., 127 S.W.2d 82; McAndrews v. Prudential Ins. Co. of America, 132 Neb. 332, 271 N.W. 857, 109 A.L.R. 821; Floyd M. Andrews, Inc., v. Aetna Life Ins. Co., 198 Minn. 1, 268 N.W. 415; Mullaney v. Equitable Life Assur. Soc., 66 N.D. 235, 264 N.W. 663; New York Life Ins. Co. v. Farrell, 187 Ark. 984, 63 S.W.2d 520; Binder v. General American Life Ins. Co., 66 S.D. 305, 282 N.W. 521; Feder v. Midland Casualty Co., 316 Ill. 552, 147 N.E. 468; Jabara v. Equitable Life Assur. Soc., 280 Ill.App. 147; Hanson v. Northwestern Mut. Life Ins. Co., 229 Ill.App. 15; Hanon v. Kansas City Life Ins. Co., 269 Ill.App. 135; Mutual Life Ins. Co. v. Hebron, 166 Miss. 145, 146 So. 445; Jenkins v. Mutual Life Ins. Co., 130 Pa.Super. 442, 198 A. 486.

[2] Illustrative cases involving clauses of the second class are: Minnesota Mut. Life Ins. Co. v. Marshall, 8 Cir., 29 F.2d 977; Viles v. Prudential Ins. Co. of America, 10 Cir., 96 F.2d 3; Lydon v. New York Life Ins. Co., 8 Cir., 89 F. 2d 78; Boyett v. United States, 5 Cir., 86 F.2d 66; National Life Ins. Co. v. Cook, 194 Ark. 794, 109 S.W.2d 679; Hablutzel v. Home Life Ins. Co., 332 Mo. 920, 59 S.W.2d 639; Aetna Life Ins. Co. v. Davis, 187 Ark. 398, 60 S.W.2d 912; Equitable Life Assur. Soc. v. Neff, 104 Ind. 62, 10 N.E.2d 307; Kingsford v. Business Men's Assur. Co., 57 Idaho 727, 68 P.2d 58; Bank of Commerce & Trust v. Northewestern Nat. Life Ins. Co., 160 Tenn. 551, 26 S.W.2d 135, 68 A. L.R. 1380; Philadelphia Life Ins. Co. v. Ervin, 165 Va. 469, 182 S.E. 209; Lenkutis v. New York Life Ins. Co., 301 Ill.App. 358, 23 N.E.2d 580.

tion of her policy after the occurrence of the event upon which her right to the benefits depended ought not to work a forfeiture of that right. The disability having occurred prior to the date when the reduction of the insurance became effective, we think the company became obligated to grant to the insured the disability benefits provided for in the policy as originally written.

Our construction of the disability provisions of this policy finds support in the case of Birnbaum v. Mutual Life Ins. Co., 170 Misc. 83, 9 N.Y.S.2d 928, 929, where the identical provisions of a similar policy were under consideration. The question for decision in that case was whether proofs of disability occurring before age 60 which were furnished by an insured who had passed the age of 60 entitled him to the payment of disability benefits. While the court held that proofs of disability furnished after age 60 came too late, it said:

"I think the meaning of the rider and Section 3 is clear and unambiguous. Instead of benefits beginning as of the date when proof of claim is filed, the benefits are to commence at the end of the first completed month of the disability, and not as of the day when proof of claim is received. The purpose of this rider was to give the insured more time to determine whether the disability was of a permanent nature, and any delay, in the filing of the proof of claim, would thus not penalize an honest claimant.

"I do not think there is anything in the rider which destroys the requirement that proof of claim, in any event, must be presented before the disabled person reaches the age of 60 years, and I do not think the average insured person, reading the policy, could take the rider to mean that he may delay filing his proof of claim, until after he has reached the age of 60 years. Such a construction would alter the entire nature of the contract."

In Lenkutis v. New York Life Ins. Co., 301 Ill.App. 358, 23 N.E.2d 580, 581, the policy under consideration provided that upon receipt by the company at its home office of due proof that the insured had become totally disabled and that such disability had continued uninterruptedly for "a period of at least six months * * * the Company will waive the payment of each premium under said policy falling due after the commencement of such total disability and during its continuance." The policy also provided: "Written notice of claim hereunder must be received by the Company at its home office during the lifetime and during the continuance of total disability of the insured. Failure to give such notice within such times shall not invalidate any such claim if it shall be shown not to have been reasonably possible to give such notice within such times, and that notice was given as soon as was reasonably possible." The insured in that case had appendicitis February 28, 1935, was operated on, March 2nd, and died March 7, 1935. A premium due February 2, 1935, on his policy was not paid. The grace period expired March 5, 1935. The insured's beneficiary furnished proofs of death. The company denied liability. The court held that the insured's death determined the permanency of his disability; that it was not necessary in order to fix the liability of the insurer that the disability of the insured must have continued for six months prior to his death; that the insured became totally and permanently disabled during the grace period and was too ill to furnish proofs of disability; and that his beneficiary was entitled to recover. The court said, page 582 of 23 N.E.2d: "In the construction of life insurance contracts, the policy of the law is to so interpret the policy as to sustain the claim for indemnity if it can be reasonably done, and not to defeat same without a plain necessity, and equivocal provisions in the policy, wherein it is sought to narrow the range of the insurer's obligation, are to be most strongly construed in favor of the insured. Kaplan v. United States Fidelity & Guaranty Co., 343 Ill. 44, 174 N.E. 834; Morris v. Central West Casualty Co., 351 Ill. 40, 183 N.E. 595." While the Lenkutis case is not exactly in point here, it in effect holds that an insured's right to a waiver of premiums, where the waiver is to commence as of the date of disability, accrues on that date. There can be little doubt as to what construction the same court would place upon the disability provisions of the policy in suit.

It is our conclusion that, under the law of Illinois and the law generally, the insured in the case at bar was entitled to the disability benefits provided by her policy in force on February 10, 1933, the date of the commencement of her disability, and was not required to accept the reduced benefits provided by the policy after its reduction on July 16, 1933.

The decree is affirmed.