**NALLEY v. NEW YORK LIFE INS. CO.**

No. 293.

District Court, N. D. Georgia,
Gainesville Division.

Jan. 5, 1943.

Boyd Sloan and Joe K. Telford, both of Gainesville, Ga., for plaintiff.

Bryan, Carter & Ansley, of Atlanta, Ga., for defendant.

LOVETT, District Judge.

Plaintiff, the holder of two policies of life insurance issued by defendant to him, seeks in equity to cancel certain endorsements subsequently made on them. The policies as originally written contained provisions for payment of a certain monthly income and for waiver of premiums upon due proof before default in payment of premiums of total and permanent disability of the insured, and for double indemnity for death caused by accidental means. The endorsements eliminated these provisions.

If the equitable relief sought is granted, plaintiff asks for a money judgment for the premiums paid and benefits accruing after the time he says he became disabled.

The plaintiff contends that upon being informed his policies had lapsed for non-payment of premiums he agreed to the changes made by the endorsements on the policies under a misconception of his physical condition and because the defendant with knowledge of his condition fraudulently concealed the facts from him. Alternatively, if fraud has not been established, he says there was a mutual mistake of fact by both parties concerning his physical condition. At the time the additional benefits granted by the policies were taken out of them he urges that, though he did not then know it, he was totally and permanently disabled, and the policies by their terms had, therefore, matured, and further premiums were waived.

The defendant replies that the policies having lapsed for non-payment of premiums, upon application by the insured for reinstatement it was discovered that he was not as good insurance risk as he was when the policies were written; that it was unwilling to restore the insurance—and was under no obligation to do so—unless the additional benefits were withdrawn, and so informed plaintiff; that thereupon he, with as much or more knowledge concerning his own physical condition as the defendant had, agreed to the changes in the policies. Standing on the language of the policies, defendant insists that the insurance had lapsed before the insured applied for reinstatement and the changes by endorsement were made. Fraud is denied, and issue is joined as to the total and permanent disability of the insured at the time it is claimed the policies lapsed.

Evidence has been heard, briefs and arguments of counsel have been considered, and the case is ready for final decree.

### Findings of Fact.

The facts are not greatly in dispute. Continuously since 1926, when the policies were issued, plaintiff has been an automobile dealer and distributor in Gainesville, Georgia, with subdealers and agencies in several other places in northeast Georgia. Until 1935 he was active and industrious in the management and supervision of his business, frequently working from twelve to eighteen hours each day. In May 1935, while en route to Detroit, Michigan, with his wife, he suffered a heart attack. He continued to Detroit, called a doctor, was given sedatives and something to relieve the pain from which he was suffering, and was advised to return home by airplane and consult his own physician. He remained at Detroit for three days and then returned home by automobile, his wife driving the greater part of the way, he some of it. On reaching home his family physician advised consulting a heart specialist in Atlanta, which he did in June. He was then informed that a blood vessel of his heart had ruptured, was placed on a diet and was told that he should rest and restrict his activities in his business. Cardiograms were made and he understood their purpose. This physician said to him: "Well, I am going to gamble with you; I believe you can restrict your activities and may be I can pull you through". He observed the required regime, going to his business daily for an average of three to five hours, and delegating to others many of the duties he had previously performed. At that time he believed his condition was temporary and that he would eventually

recover. He gave the insurer no notice of his changed physical condition and at that time claimed no disability benefits, continuing as theretofore to pay the premiums on the policies. For the next two years he remained under the care of his doctor and from time to time his condition showed some improvement. His blood pressure had been low but approached normal again. In the summer of 1937 he applied to the insurer for additional life insurance. A medical examination revealed the heart attack in 1935 and the additional insurance was not obtained. Premiums on the policies became due on December 16, 1937. On January 15, 1938, plaintiff sent the defendant his check for the premiums —within the grace period by one day. The bank on which it was drawn returned the check unpaid for insufficient funds to the credit of plaintiff. The defendant promptly advised him the check was unpaid, and on January 22 he sent a cashier's check to cover it. The defendant thereupon informed him the policies had lapsed for nonpayment of the premiums and that before they could be reinstated a medical examination would be required. That examination also revealed the previous heart attack. The defendant then saying the evidence of insurability not warranting it declined to reinstate the policies as written, but indicated if the disability benefits, waiver of premium and double indemnity provisions were eliminated, the policies might be reinstated and continued as life insurance and for smaller premiums. Thereupon the plaintiff signed written requests (later attached to the policies) to change the policies "without Disability and without Double Indemnity benefits". The endorsements to this effect were made on the policies on March 10, 1938, and a refund was made of the excess premiums included in the cashier's check. In connection with the medical examination plaintiff signed an application dated January 28, 1938, in which it was stated "I hereby apply for the reinstatement (of the policies) which lapsed for nonpayment of premiums", etc. In answer to the question in this application "Have you ever consulted a physician * * * for or suffered from any ailment or disease of * * * (B) The heart, Blood Vessels or Lungs", his written reply was "yes, ailment unknown, one attack, May 1935, duration 4 mos. Severity mod. Cured in so far as symptoms both objective and subjective." The examining doctor's report called attention to the previous examination by the same doctor in 1937 and a letter written at that time describing plaintiff's past illness, and added "Since that examination he has worked every day and has had no symptoms of his past illness. He has had no doctor except a check up by (a named physician) in July 1937." Thereafter until June 26, 1940, plaintiff regularly paid the reduced premiums on his policies as thus modified, and gave no notice of claim of disability. At that time, meanwhile having suffered other heart attacks of greater severity (one in September 1938 as a result of which he remained in the hospital three weeks and another in June 1940 even worse), he consulted counsel, who promptly wrote the defendant stating plaintiff was totally and permanently disabled before February 14, 1938, and claiming waiver of premiums and disability benefits. Blanks for proof of disability were requested. The defendant replied denying liability. These proceedings followed. The physicians familiar with plaintiff's physical condition agreed that he was totally disabled from May 1935. Applying the Georgia rule hereafter mentioned as to what constitutes total disability, I find that he was. I do not find any mutual mistake of fact, or mistake by the insured and fraud by the insurer, for the reasons hereinafter given.

### Conclusions of Law

The first and crucial question to be determined is whether or not the policies had lapsed when the defendant agreed to reinstate them without the disability and double indemnity benefits, because different consequences follow. If lapsed, new contracts were made. If still of force, the original contracts were never at an end.

The question turns on the proper construction of the pertinent provisions of the policies. They read as follows:

Face of policy:

The "Company agrees to pay to (the beneficiaries) * * * the face of this policy upon receipt of due proof of the death of (the insured)", and to pay to the insured a named amount "upon receipt of due proof that the insured is totally and presumably permanently disabled before age 65, as defined under 'Total and Permanent Disability' on the second page hereof".

On second page:

"Upon receipt at the Company's Home Office, before default in payment of pre-

mium, of due proof that the insured is totally disabled as above defined, and will be continuously so totally disabled for life, or if the proof submitted is not conclusive as to the permanency of such disability, but establishes that the insured is, and for a period of not less than three consecutive months immediately preceding receipt of proof has been, totally disabled as above defined, the following benefits will be granted:

"(a) Waiver of Premium.—The Company will waive the payment of any premium falling due during the period of continuous total disability, the premium waived to be annual, semi-annual or quarterly premium according to the mode of payment in effect when disability occurred.

"(b) Income Payment.—The Company will pay to the insured the monthly income stated on the first page hereof ($10 per $1,000 of the face of this policy) for each completed month from the commencement of and during the period of continuous total disability. If disability results from insanity, payment will be made to the beneficiary in lieu of the insured.

"In event of default in payment of premium after the insured has become totally disabled as above defined, the policy will be restored and the benefits shall be the same as if said default had not occurred, provided due proof that the insured is and has been continuously from date of default so totally disabled and that such disability will continue for life or has continued for a period of not less than three consecutive months, is received by the Company not later than six months after said default".

■ Policies of insurance may be so written that the waiver of premiums on the insured's disability will not arise until proofs of disability are furnished. If the making of the proofs is the condition on which disability arises, delayed proofs beyond the period of grace allowed by the policy will not prevent a lapse. However, if the insurer agrees to waive premiums and pay benefits on the occurrence of disability and the requirement of due proof is not a condition of the obligation but is to be regarded only as a mode of establishing it, the policy does not lapse.

■ The interpretation to be given the quoted language in the policies is a question of state law which this court should determine in accordance with the decisions of the appropriate state courts if any can be found. Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290; New York Life Ins. Co. v. Jackson, 304 U.S. 261, 58 S.Ct. 871, 82 L. Ed. 1329; Rosenthal v. New York Life Ins. Co., 304 U.S. 263, 58 S.Ct. 874, 82 L.Ed. 1330. The precise language to be construed does not appear to have been considered by the courts of Georgia, although language somewhat similar has been. In the majority of the cases, particularly where the premiums falling due subsequent to the filing of the proof and not the premiums from the beginning of the disability, are waived, the filing of proof is held to be a condition precedent of liability or waiver of premiums. Northwestern Mut. Life Ins. Co. v. Dean, 43 Ga.App. 67, 157 S.E. 878; Dean v. Northwestern Mut. Life Ins. Co., 175 Ga. 321, 165 S.E. 235; Aetna Life Ins. Co. v. Allen, 49 Ga.App. 200, 174 S.E. 724; Johnson v. Travelers' Ins. Co., 51 Ga.App. 243, 180 S.E. 387; Brown, Adm'r v. New York Life Ins Co., 54 Ga.App. 471, 188 S.E. 293; Equitable Life Assurance Society v. Adams, 56 Ga.App. 5, 192 S.E. 90; Union Central Life Ins. Co. v. Trundle, 61 Ga.App. 110, 5 S.E.2d 675; Massachusetts, etc., Ins. Co. v. Montague, 63 Ga.App. 137, 138, 10 S.E.2d 279; Berry v. Travelers Ins. Co., 64 Ga.App. 727, 14 S.E.2d 196. In the case of Life Ins. Co. of Virginia v. Williams, 48 Ga.App. 10, 172 S.E. 101, 103, on the other hand, where the language was "Upon proof satisfactory to the company * * * that while the said policy was in force and effect, before default in the payment of premiums * * * the insured has become totally disabled * * * the company will waive the payment of any premium falling due under said policy during such disability", it was held that proof of disability was not required before default in the payment of premiums in order to effect a waiver of the premiums. The Dean case, supra, was distinguished on the ground that proof of disability there was never furnished to or waived by the insurer. In the Williams case, however, in addition to the language being different from that employed in the present case, also—unlike the facts here— an effort to prove disability was made by the insured within six months after the date on which the premium became due and was

not paid, the policy there containing a provision similar to that used in the instant case providing for reinstatement within six months after default.

 Accepting the testimony of the plaintiff and his physicians that before the premiums on his policies became due in December 1937, he was totally disabled (which in Georgia has been construed to mean he is unable to do substantially all of the material acts necessary to the transaction of his occupation in substantially his customary and usual manner, though still able to perform some parts of his work: See Cato v. Aetna Life Ins. Co., 164 Ga. 392, 138 S.E. 787; Prudential Ins. Co. v. South, 179 Ga. 653, 177 S.E. 499, 98 A.L.R. 781; New York Life Ins. Co. v. Oliver, 45 Ga.App. 756, 165 S.E. 840; New York Life Ins. Co. v. Thompson, 50 Ga.App. 413, 178 S.E. 389; Mutual Life Ins. Co. v. Childs, 64 Ga.App. 658, 14 S.E.2d 165), does the language of the policies mean that premiums were waived therefrom and thereby, and that "due proof that the insured is totally disabled", though a condition of recovery was not a condition of liability? I think not. If the words used are to be given their ordinary meaning it is obvious that the agreement to pay or to waive premiums never arose, for both obligations were expressly conditioned (in the face of the policy) "upon receipt of due proof that the insured is totally and presumably permanently disabled", and (in the disability clause on the second page) "upon receipt at the Company's Home Office, before default in the payment of premium, of due proof that the insured is totally disabled". No proof was ever submitted to the company of the disability. It is urged that proofs were waived by the company's denial of liability. Future proofs were thereby waived, but not those which were required two and one half years before to keep the policy of force when a premium became due and was not paid. Saul v. New York Life Ins. Co., 5 Cir., 92 F.2d 665(2), 666. Premiums were not waived by disability alone; it took disability plus proof of it to bring about a waiver. Waiver was promised only on receipt at the home office of the company of the proofs.

 The provisions in the policies seem to be free of ambiguities, and plain words should be given their usual and natural meaning. To relieve the insured here from complying with the plain requirement of his policies, constituting what I regard as a condition precedent to the waiver of premiums, would be to make a different contract for the parties to take the place of the one they have made for themselves. By the language of the policies two contingencies were provided for—disability before default and disability after default. First, if the total disability (not necessarily permanent but lasting for at least three months immediately preceding proof of its existence) occurred after the payment of the last current premium falling due, and while the policy was of force, upon receipt of due proofs of disability before the next premium payment date the company agreed to waive the payment of any premium falling due thereafter during the period of continuous total disability. Secondly, if a like disability occurred before the premium payment date and there was default (without claim or proof of disability) in the payment by the insured of the next ensuing premium, the company agreed to restore the policy and the benefits as though the default had never occurred, provided due proof was made within six months after the default that the insured was and had been continuously from date of default so totally disabled. In both events the income payments were to be reckoned from date of disability. Unless the furnishing of proof of disability is a condition precedent, the provision for restoring the policy in the event of default in the payment of premium after the insured has become totally disabled is rendered meaningless or contradictory of the other and earlier policy provisions. I can find no inconsistency between them. To say that disability alone, absent any proof of it, waives all premiums, whether in default or not, and at the same time to say default in payment of premiums after disability requires proof of disability within six months of the default to restore the policy and revive the benefits is to say two different things. See Peoria Life Ins. Co. v. Bergholm, 5 Cir., 50 F.2d 67; Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416; Egan v. New York Life Ins. Co., 5 Cir., 67 F.2d 899; Johnson v. Mutual Life Ins. Co. of New York, 4 Cir., 70 F.2d 41; Reingold v. New York Life Ins. Co., 9 Cir., 85 F.2d 776; Griffiths v. Massachusetts Mut. Life Ins. Co., 2 Cir., 96 F.2d 57; Brams v. New York Life Ins. Co., 299 Pa. 11, 148 A. 855. The language of the policies here considered is quite unlike that in Love v. Northwestern, etc., Ins. Co., 5 Cir., 119 F.2d

251 and Boyett v. United States, 5 Cir., 86 F.2d 66, where the obligations did not perish by delayed proofs, for there either ambiguity existed or the very opening words the insurers wrote into their contracts made the promise depend on disability and not upon proofs. Seidman v. New York Life Ins. Co., 162 Misc. 560, 296 N.Y.S. 55, is also distinguishable, for there had been no default in the payment of premiums in that case and therefore no lapse of the policy was claimed.

 I am not unaware of the cases which hold under similar language that waiver of premiums begins at the time of disability and not at the time of its proof. There are two lines of decisions construing policy provisions similar to those I have quoted on the question of when the time of the waiver of payment of premiums begins. See Minnesota Mut. Life Ins. Co. v. Marshall, 8 Cir., 29 F.2d 977; Lydon v. New York Life Ins. Co., 8 Cir., 89 F.2d 78; Viles v. Prudential Ins. Co., 10 Cir., 96 F.2d 3; Mutual Life Ins. Co. of N. Y. v. Drummond, 8 Cir., 111 F.2d 282. These cases distinguish between disability benefits promised to commence at the time of disability from those promised only from the time of proof. In the former they hold that the furnishing of proof by the insured to the insurer is not a condition precedent to the waiver of premiums. This does not seem to me to be the true distinction always controlling. See Avery v. New York Life Ins. Co., 5 Cir., 67 F.2d 442, where premiums were waived from the commencement of the disability and nevertheless proof was held a condition precedent. The policies should be construed as a whole to gather the intentions of the parties. This is particularly true in the present case if it is remembered that by the plain words of the contract the rights of the parties are defined in clear and understandable language under the two different situations I have mentioned, viz., default in the payment of premiums before disability and default after disability. In the latter situation it is here agreed in the policies that they will be restored and the benefits revived as if no default had occurred on the express condition that due proof of disability "is received by the company not later than six months after said default". In this case the default occurred at the latest on January 16, 1938. No proof of disability or tender of it was made until June 26, 1940. I am of the opinion, therefore, that the policies had lapsed for nonpayment of premiums before they were modified by the endorsements, and new contracts were then made.

The policies having lapsed the only contract between the parties left under the policies was the automatic temporary insurance which the policies stated their cash surrender value less indebtedness would purchase as a single net premium at the attained age of the insured (which amount was small). The policies also provided "Disability benefits shall not apply to the Temporary Insurance". Have we a case here that justifies rescinding the endorsements under these circumstances? If the plaintiff is entitled to relief in equity and the endorsements are to be regarded as the only new contracts made, and they are canceled, the plaintiff is still without disability benefits, for when the status quo is restored all he has is the Temporary Insurance which contains no such benefits. If we regard the new contracts as agreements to insure the life of the plaintiff without disability benefits, then because rescission must go to the whole contract—there can be no rescission in part—the entire contractual relation is destroyed and plaintiff is left with no insurance of any kind. Manget v. Cunningham, 166 Ga. 71, 142 S.E. 543; Orient Ins. Co. v. Dunlap, 193 Ga. 241, 17 S.E.2d 703, 138 A.L.R. 916. But I prefer not to rest my final conclusion on these narrow grounds. There are other and broader reasons why relief can not be granted.

The policies had lapsed. The parties negotiated new contracts. No fraud by the defendant in these negotiations has been shown. The defendant made no misrepresentation to plaintiff. The plaintiff actually had or had available as much information concerning his physical condition as the defendant had. He knew he had suffered a heart attack in 1935. He was advised that restricted activity in business was necessary and even that was a gamble with his life. There was no mutual mistake of existing facts by the parties. Nor was there any mistake of fact material to the contract by the plaintiff only. He may have been, and I think was, mistaken as to his disability being temporary only and either did not know or misconceived what constituted total disability under the law of Georgia. He acted with entire good faith in continuing at work, and in withholding any claim for

disability benefits until his condition grew worse in 1939 and 1940. Ignorance of law or mistake in opinion or mental conclusion as to a future event, however, is not relievable against in equity. Ga. Code, Secs. 37-207, 37-209, 37-210; Callan Court Co. v. Citizens & So. Nat'l Bk., 184 Ga. 87(3), 130, 190 S.E. 831; Abbott v. Dermott, 34 Ga. 227; Keith v. Brewster, 114 Ga. 176, 39 S.E. 850; Langston v. Langston, 147 Ga. 318, 93 S.E. 892; Louisville & Nashville R. R. Co. v. Cox, 133 Ga. 763, 66 S.E. 1088; Barco v. Penn Mut. Life Ins. Co., 5 Cir., 126 F.2d 56.

Let a decree dismissing the bill be presented.