Walter S. JORDAN, Plaintiff-Appellant,

v.

JOHN HANCOCK MUTUAL LIFE IN-
SURANCE COMPANY, Defend-
ant-Appellee.

No. 11341.

United States Court of Appeals
Seventh Circuit.

April 29, 1955.

Wilbur F. Dassel, Winfield K. Denton, Evansville, Ind., for appellant.

Frederick P. Bamberger, Evansville, Ind., Edmund F. Ortmeyer, William P. Foreman, Evansville, Ind., for defendant-appellee.

Before DUFFY, Chief Judge, and MAJOR and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This action was filed July 24, 1951, on two policies of life insurance to recover indemnity payments of $50 per month on each policy for total and permanent disability of the insured, which disability occurred on October 8, 1937.

The defendant, John Hancock Mutual Life Insurance Company, on February 8, 1930, executed and delivered to the plaintiff, Walter S. Jordan, four identical policies of life insurance which were numbered 1808859 to 1808862, both inclusive. These policies are hereinafter sometimes referred to as numbers 59, 60, 61 and 62, respectively. Premiums of $77.95 were payable quarterly on each of these policies on the eighth day of February, May, August and November of each year. Each of these policies insured the life of the plaintiff for $5,000 and, in consideration of an additional yearly premium of $33.25, also provided that:

"If, after the payment of the initial premium under this contract and under the policy, and before default in the payment of any subsequent premium, and during the continuance of the policy in full force, due proof shall be presented during the lifetime of the insured that prior to the anniversary of the policy nearest his sixty-fifth birthday the Insured:

"A. Has become totally and permanently disabled * * *

"the Company will grant the following benefits:

"1. Waive the payment of further premiums due after the commencement of such disability, and

"2. Pay to the Insured, * * * for each completed month from the commencement of disability and throughout its continuance, a sum equal to one percentum of the face amount of the policy exclusive of any policy additions.

\* \* \* \* \* \*

"Within six months after the due date of any premium in default, provided no previously due premium is also in default, this policy will be reinstated and disability benefits shall be the same as if policy had not lapsed if due proof as before provided shall be presented that total disability existed at date of default and will continue for life or has continued for ninety consecutive days."

The parties stipulated the following facts: These four policies were issued by the defendant to the plaintiff on February 8, 1930, and on October 8, 1937, the plaintiff became permanently and totally disabled with a disease of the heart. The quarterly premiums which became due on policies 61 and 62 on February 8, 1940, and all subsequent premiums on those two policies were neither paid by the plaintiff nor by anyone else in his behalf. As of February 8, 1940, each of said policies had a total cash surrender value of $886.96 which was reduced by loans and interest on the loans to a net cash surrender value of $52.03. On March 8, 1940, the plaintiff mailed to Dan W. Flickinger, the General Agent of the defendant in Indianapolis, Indiana, two checks totaling $130.76. This amount was paid and credited to the payment of the quarterly payments due on February 8, 1940, on policies 59 and 60. A letter from Flickinger to the plaintiff, dated March 9, 1940, thanked the plaintiff for the remittance covering "the quarterly premiums and interest due February 8th under policies No. 1808859–60," and there were enclosures of official receipts of the defendant showing the application of these payments to policies 59 and 60. This letter also expressed the hope that the plaintiff would be able to send an additional remittance of $130.76 and that policies 61 and 62 might be reinstated.

The records in the home office of the defendant indicated that policies 61 and 62 had been surrendered, subject to return of contracts, as of April 24, 1940, and the company's check for the amount of the surrender value had been returned thereon on June 5, 1940. On June 17, 1940, Flickinger wrote a letter to the plaintiff, which the plaintiff received, and in which Flickinger made the following statement: "We have your letter of the 14th enclosing your two present policies Nos. 1808861–62, as well as the surrender papers which we are sending to our home office today and, assuming that our records show the correct amount of the surrender value, they will send us a check for $104.04." The defendant then made entries on its home office records showing that policies 61 and 62 had been surrendered on June 1, 1940.

The two policies, numbered 61 and 62, "were surrendered to the defendant and, pursuant to the surrender papers executed by the plaintiff, a check for the total net cash surrender value of both policies, 1808861 and 1808862, in the amount of $104.06 was mailed by the defendant to the said Dan W. Flickinger * * *" who applied that amount to the partial payment of $155.90, the amount of the premiums then due on policies 59 and 60, and the balance of $51.84 was then paid by the plaintiff.

On August 12, 1941, the plaintiff mailed to Flickinger a letter which stated that he (plaintiff) had not worked since October 8, 1937; that at that time he was carrying with the defendant $20,000 life insurance with total disability clause; that plaintiff just kept thinking he would get better and be able to work again so he did not file a claim for disability at that time; and that, rather than file a claim, he dropped $10,000 of the insurance, thinking that he would surely be able to work again and pay for that amount. This letter explained plaintiff's disability and indicated his willingness to leave it to the defendant to figure out the disability payments to which he was entitled. With this letter the plaintiff also submitted statements from a representative of his former employer and from two doctors as to his disability. On August 30, 1941, plaintiff executed and mailed to Flickinger a formal statement of his claim for disability payments on policies 59 and 60. This proof of claim was on a printed form furnished him by the defendant. This proof of claim and the supporting medical statements were forwarded by Flickinger to the claim department of the defendant's home office. The defendant, on September 25, 1941, approved the plaintiff's claim for disability payments on policies 59 and 60, allowed the claim from October 8, 1937, and paid the plaintiff the total sum of $7,194.40, which amount included payments of $100 per month from October 8, 1937, a refund

of premiums paid on plaintiff's policies 59 and 60 since the time of his disability and waived the payment of any further premiums on said two policies. Since that time the defendant has waived the payment of any further premiums on policies 59 and 60 and, since said settlement, has paid the plaintiff $100 per month pursuant to the provisions of the policies.

Nothing further happened between the parties until October 21, 1950, nine years later, when the plaintiff wrote the defendant a letter in which plaintiff recited the fact that he had claimed disability benefits under policies 59 and 60 in 1941 and that the company had recognized and allowed his claim for total disability as of October 8, 1937. In this letter the plaintiff asked that the defendant also allow and pay total disability benefits from October 8, 1937, on policies 61 and 62, the two policies which plaintiff had surrendered and on which the company had paid, and plaintiff had received, the net cash surrender value. This request was refused by the defendant, and the plaintiff then filed this action.

In his complaint the plaintiff alleged that he had performed all conditions precedent on his part to be performed under policies 61 and 62 and demanded payments of disability benefits on these two policies, together with interest thereon from the date each of said $50 payments became due.

In its answer to the complaint the defendant alleged the failure of the plaintiff to pay the premiums on policies 61 and 62 due February 8, 1940, the surrender of these two policies by the plaintiff, and the payment to the plaintiff of the full cash surrender value therefor. Defendant denied that plaintiff had performed all conditions precedent on plaintiff's part to be performed under the policies and alleged that plaintiff failed to file due proof of his disability during the continuance of said policies in full force or within six months after the due date of any premiums in default.

The only evidence before the trial court consisted of the above mentioned stipulation by the parties as to the facts, to which were attached, as exhibits, the policies in question, various records, such as receipts for the payment of the premiums, correspondence between the parties as to the policies, records of the defendant as to the surrender and return of the policies, the notice and proof of loss on policies 59 and 60 which were submitted by the plaintiff, and, finally, correspondence between the parties concerning the question as to the defendant's liability on the two surrendered policies.

Pursuant to the stipulation of the facts by the parties and the exhibits filed therewith, the trial court found the issuance of the four policies as alleged; that each of the policies constituted a separate and distinct contract between the parties; the permanent disability of the defendant as of October 8, 1937; the non-payment of premiums on policies 61 and 62 beginning with the premiums due on February 8, 1940; the surrender of policies 61 and 62 by plaintiff and his use of the net surrender value for the partial payment of the premiums on policies 59 and 60; the filing by plaintiff of proof of claim on policies 59 and 60; the settlement of that claim for $7,194.40, which included disability benefits from the date of plaintiff's disability; the failure of plaintiff to make any claim to disability benefits under policies 61 and 62 until October 21, 1950; the rejection of the claim by defendant; and the failure of plaintiff to file any action on policies 61 and 62 until July 24, 1951.

The trial court therefore concluded that the plaintiff was entitled to no relief against the defendant and that the complaint should be dismissed. Judgment was entered accordingly.

The plaintiff contends on this appeal that the findings of the trial court were not based on sufficient evidence and that the decision was contrary to law.

The plaintiff first points out that the disability provisions of the policy provide that the defendant will waive the payment of further premiums due after the commencement of the disability and will pay the disability benefits from the

commencement of the disability. But other language in the disability provisions attach certain clear and definite conditions to the liability of the defendant to make disability payments to the insured and to waive the payment of further premiums on the policies. The defendant bound itself to grant these benefits only "if * * * before default in the payment of any * .* * premium and *during the continuance of the policy in full force,* due proof shall be presented * * * that * * * the Insured: (A) has become totally and permanently disabled * * *." (Our emphasis.)

■ We agree with the plaintiff's argument that any ambiguity in an insurance contract "in case of doubt" must be construed against the insurer. But, in the instant case, we fail to find any ambiguity which could justify construing the language to mean anything other than what it clearly states, that is, that the defendant will grant the disability benefits if the plaintiff files his proof of loss within the limits fixed by the disability provisions of the policies.

In Rintoul v. Sun Life Assurance Co. of Canada, 7 Cir., 142 F.2d 776, 777, this court, in considering a failure to give notice of claim of disability as the policy required, said: "Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense, Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416 and while the failure to give notice or to make proof within a specified time in accordance with the terms of a policy, as a general rule, does not operate as a forfeiture of the right to recover, yet where the policy in express terms makes the giving of notice a condition precedent, a failure to comply with the terms of the policy will bar recovery, New York Life Ins. Co. v. Moose, 190 Ark. 161, 78 S.W.2d 64, and Home Life Ins. Co. v. Swaim, 200 Ark. 819, 142 S.W.2d 209."

In Griffiths v. Massachusetts Mutual Life Ins. Co., 2 Cir., 96 F.2d 57, the court was considering a complaint which was also based on life insurance policies which had been surrendered for their net surrender value. The theory of the plaintiff was that at the time the policies were surrendered the insured was entitled to disability benefits including monthly payments and waiver of further premiums. The court there pointed out that if the fact of total and permanent disability alone entitled the insured to the disability benefits the existing arrears on those benefits were much greater than the amount paid to the insured on surrender. But the court said, page 59, "the policies were not of that kind; the privileges in question depended, not only upon the fact of disability but upon proof of that disability, filed with the insurer at its home office. Until the insured complied with that condition, the insurer was not bound, and the payment of the surrender value was an adequate consideration for the release of the insured's rights. [Citing authorities.]" See also Nalley v. New York Life Ins. Co., 5 Cir., 138 F.2d 318.

■ Indiana courts recognize the necessity of complying with the requirements of a provision of a policy requiring proof of disability as a condition precedent to the liability of the insurer. Metropolitan Life Ins. Co. v. Frisch, 116 Ind.App. 657, 65 N.E.2d 852, 66 N.E.2d 768.

■ The plaintiff does not contend that this condition of the policy to the liability of the defendant violates any statute of the State of Indiana. In the absence of a statute prohibiting a special provision in a policy and in the absence of any fraud or misrepresentation, the parties make their own contract and are bound by its terms.

■■ But the plaintiff contends that, even if furnishing proofs of loss were a condition precedent to liability, the defendant, by its letter of March 9, 1940, to the plaintiff, waived proofs of loss on these policies. The letter was written to the insured by Flickinger, the General Agent of the defendant. Flickinger's

letter showed that it was in answer to a letter from the plaintiff in which plaintiff had enclosed two checks in payment of the premiums due February 8, 1940, on policies 59 and 60. The letter from the plaintiff apparently indicated that his tardiness in the payment of these premiums was due to financial troubles and that he was dropping policies 61 and 62. It is also apparent from defendant's letter that plaintiff in his letter had not mentioned his permanent disability and that the fact of plaintiff's disability was not then known to the defendant, because Flickinger in his letter urged the plaintiff to try to pay the premiums on policies 61 and 62 "in the near future," explained that, "assuming there is no change in your health, the company will be glad to consider you for reinstatement of the other two policies," and further explained how such reinstatement could be applied for. Instead of this letter amounting to a repudiation, it was a sales talk by the insurance agent urging the insured to keep the policies in force. The letter neither waived the making of proof nor the payment of premiums. Nor did the marking of the policies, "surrendered," under the facts of this case, constitute a waiver of making proof of loss, because the surrender of policies 61 and 62, as we shall hereinafter show, was the result of the voluntary surrender of these two policies by the plaintiff in consideration of the net surrender value of the policies.

■ Next, plaintiff contends that, since he became totally disabled on October 8, 1937, he was entitled to monthly payments of disability benefits and the waiver of premium payments from that date, and that he was, therefore, as of June 8, 1940, entitled to receive a payment of $2,301.55 on each of the two policies sued upon when the policies were surrendered, but that he was allowed only $104.06, the net surrender value of the policies, which amount was applied as a partial payment on the premiums then due on policies 59 and 60. Plaintiff contends that, therefore, at the time of the surrender of policies 61 and 62 there was no consideration for the release of his benefits for permanent disability and that " * * * there was no contract or agreement of any kind whereby the plaintiff agreed to release his rights to total and permanent disability which had already accrued."

The fallacy in this argument is that the liability had not then accrued because the plaintiff had filed no proof of claim as to his total disability. Plaintiff relies on Guardian Life Ins. Co. of America v. Barry, 109 Ind.App. 286, 32 N.E.2d 599, which merely held that the payment by a debtor of the amount which he admittedly owed on one debt did not constitute consideration for the release of a second debt. But in the instant case no debt had yet accrued on policies 61 and 62.

In his brief the plaintiff quotes at length from Nash v. New York Life Ins. Co., 272 Mich. 680, 262 N.W. 441. Some of the language in that opinion seems to support the plaintiff's contention that in the instant case there was no release of plaintiff's right to disability benefits. But that opinion does not set out the provisions of the policy as to the necessity of making proof of claim so we cannot determine whether or not in that case the making of such proof of claim while the policy was still in force was made a condition precedent to the liability of the insured.

■ The plaintiff also insists that, pursuant to the automatic loan provisions of these policies, he requested in writing, at the time the policies were issued, that the company, in the event plaintiff should fail to pay any premiums when due, make an automatic loan to him for the payment of such past due premiums. This provision of the policy, however, expressly provides that such request by the insured "is subject to revocation at any time." The surrender of these policies by the plaintiff for their net surrender value must be taken as a revocation by the plaintiff of the prior request for automatic premium loans to pay further premiums.

The entire argument of the plaintiff on this point is grounded on the theory that because of his failure to pay the premiums on these two policies which became due on February 8, 1940, the policies lapsed or were forfeited. But the evidence clearly shows, and the court so found, that the plaintiff voluntarily surrendered these two policies for their net surrender value. This, the plaintiff had a right to do under the provisions of these two policies and the defendant was bound to recognize this right. In New England Mutual Life Ins. Co. of Boston, Mass. v. Olin, 7 Cir., 114 F.2d 131, 139, this court, in considering a question of the possible uses by the insured of the reserve value on life insurance policies, said: " * * * He may borrow it for the payment of premiums (premium loans) or for other purposes (cash loans). He may cause the policy to lapse and apply it to the purchase of extended term or paid-up insurance. He may surrender his policy and claim it in the form of cash surrender value. It is for his benefit and he may do with it as he wills, but he can not use it up and have it too. In this regard the policy gives to the insurer what the statute would not take from him, namely, protection against paying out the reserves twice."

The plaintiff's argument that there was an election by the defendant here, as in New York Life Ins. Co. v. Lahr, 192 Ind. 613, 137 N.E. 673, is not sound. There the insurer failed to comply with the provisions of the contract. In the instant case the defendant would have breached its contract if it had failed to recognize and comply with the plaintiff's request to surrender policies 61 and 62 in consideration of the payment by the defendant of their net cash surrender value, as provided by the policies.

Since we hold that under the facts of this case the plaintiff was not entitled to any recovery on policies 61 and 62, we need not consider whether or not the action was barred by the statute of limitations.

The judgment of the District Court is Affirmed.